FREDERICK GARDNER v. MICHIGAN CENTRAL R. R. Co.

*Railroad injury— Uncoupling cars.*

1. A switchman who had been strictly cautioned against having anything to do with coupling cars tried to uncouple some while the train was moving, and had his foot caught where the planking had been for some time slightly broken, though the defect had not been seen by him as yardman and the railroad company had no notice of it. *Held,* that he could not recover for the injury resulting to him.

2. A railroad employee takes the ordinary risks of the work for which he hires; and if the company has used proper diligence in choosing competent servants it is not liable in damages for an injury to one of them caused by the carelessness of another.

Error to Berrien. (A. J. Smith, J.) Oct. 15–16.—Jan. 6.

CASE. Defendant brings error. Reversed.

*Edwards & Stewart* and *Ashley Pond* for appellant.

*O. W. Coolidge* and *Edward Bacon* for appellee. A railroad company must furnish and keep its track in such condi-

tion that it can be safely used by its employees : *Chic. & N. W. Ry. Co. v. Bayfield* 37 Mich. 205 ; Cooley on Torts, 561; *Swoboda v. Ward* 40 Mich. 420 ; *Snow v. Hous. R. R. Co.* 8 Allen 441 : Wood on Master and Servant 695 ; *C., M. & St. P. Ry. Co. v. Ross* 112 U. S. 377 ; *Hough v. Railway Co.* 100 U. S. 219 ; *C. & N. W. Ry. Co. v. Swett* 45 Ill. 197 ; Wharton on Neg. § 232a ; *Flike v. B. & A. R. R. Co.* 53 N. Y. 549 ; *Ford v. Fitchburg R. R. Co.* 110 Mass. 240 : 1 Redfield on Railways 521 ; *Plank v. N. Y. C. & H. R. R. R. Co.* 60 N. Y. 607 ; *R. R. Co. v. Keary* 3 Ohio St. 210 ; *Gilman v. Eas. R. R. Co.* 13 Allen 440 ; *Thompson v. Dymela* 1 N. W. Rep. 255 ; *Brabbits v. C. & N. W. Ry. Co.* 38 Wis. 293 ; *Lewis v. St. Louis & I. M. R. R. Co.* 59 Mo. 495 ; as a corporation must necessarily act through agents, the negligence of its employees in the discharge of duty is attributable to itself : *C. & N. W. Ry. Co. v. Jackson* 55 Ill. 492 ; *Condon v. Mo. P. R. R. Co.* 78 Mo. 567 ; *Crispin v. Babbitt* 81 N. Y. 521 ; *Fuller v. Jewett* 80 N. Y. 52, 53 ; *Durkin v. Sharp* 88 N. Y. 227 ; *Wedgwood v. R. R. Co.* 41 Wis. 483 ; *Solomon R. R. Co. v. Jones* 30 Kans. 601 ; a master is bound to apprise his servant of unreasonable risks and the existence of places dangerous to work upon, which cannot be considered in the contemplation of the employee as a part of the usual and ordinary risks and perils of his employment : Wood's M. & S. 713, 714 ; *Coombs v. New Bedford Cordage Co.* 102 Mass. 572 ; *Gibson v. Pacif. R. R. Co.* 46 Mo. 163 ; a railroad company cannot avoid liability for injuries caused by defects of which it might have known by ordinary care : *Noyes v. Smith* 28 Vt. 59 ; *Ryan v. Fowler* 24 N. Y. 410 ; *Cayzer v. Taylor* 10 Gray 274 ; *Seaver v. Boston & Maine R. R. Co.* 14 Gray 466 ; *Hayden v. S. M'g Co.* 29 Conn. 548 ; *Walsh v. Peet Valve Co.* 110 Mass. 23 ; a master is bound to use proper care to see that his premises are not only fit and proper for the carrying on of his business, but that they are kept so : *Chapman v. Erie R. R. Co.* 55 N. Y. 579 ; *T. W. & W. R. R. Co. v. Ingraham* 77 Ill. 309 ; *I. B. & W. R. R. Co. v. Flanigan* 77 Ill. 365 ; if a railway employee is directed by an agent of the company to do an act, the latter is justified in obeying and cannot be charged with contributory negligence, although the act should be one which, apart from this circumstance, would be deemed negligent : Shearman & Redf. on Neg. 547 ; *Warren v. F. R. R. Co.* 8 Allen 227 ; *Sweeny v. O. C. & N. R. R. Co.* 10 Allen 368 ; *Newson v. N. Y. C. R. R. Co.* 29 N. Y. 383 ; *McIntyre v. N. Y. C. R. R. Co.* 43 Barb. 534.

SHERWOOD, J. This is an action of trespass on the case, brought by the plaintiff to recover damages for injury sustained by him on the morning of the 16th day of May, 1882, at the city of Niles, while attempting to uncouple cars in a moving train, and while in the service of the defendant. The cause was tried at the Berrien circuit, before Judge Smith, by a jury, at the February term, 1884, and a verdict was rendered for the plaintiff for $5000 damages. Defendant brings error.

No question is raised upon the pleadings. From the record it appears that in the city of Niles, Fifth street, running north and south, crosses the Michigan Central Railroad tracks. At this crossing, besides the main track, there are, of all kinds, six others. These several tracks occupy a large portion of defendant's right of way at this crossing, and thirty-two feet of the traveled part of Fifth street was very well planked between the tracks by the company with pine planks, three and one-half inches thick, and which were laid new the fall before the injury complained of occurred. The company's station-house, dining-hall and freight-house, and other depot buildings at Niles, were located at this point, and a large number of trains were arriving and departing during the day and night. The services of a number of men in the yard and freight-house, and about the grounds, were required to look after and do the business at this station. Mr. Gregg was station agent during 1882 at Niles, and had been for more than thirty years. E. D. Bachelor was yard-master, and had been years before. He had control of all the help in the yard, but was not at the station much during the night; and when he was absent he left one of the men employed in the yard, named Etzcorn, in charge. It further appears that near the southeast corner of the planking in Fifth street, and about twelve or fifteen feet therefrom, stood a switch. This switch moved the track south in adjusting it for the passage of trains, and at some time previous to the morning the injury occurred to plaintiff (the exact time, however, is not shown by the record), owing to the failure of a proper adjustment of the switch, a car-wheel had struck the end of a plank next to the rail of

the track, breaking it and crushing it down, making a hole in the surface seven or eight inches long and between three and four inches wide. This appears to have been the only defect anywhere in the planking or grounds about the station or yard. It further appears that it was the duty of the yardmen to examine and make discovery of any defect in the planking or other places in the yard, and at once repair the same, and call on the track-master for the necessary materials for that purpose, when they were not on hand at the station.

The plaintiff was a resident of Niles, and had been for eighteen years at the time he received his injury; was forty-five years of age, and had been in the employ of the company continuously in various capacities for twlve years. He had worked with a gravel train, and afterwards at the freight house and yard at Niles for ten years, and immediately previous to the accident, had for six months been one of the yardmen working under the direction of Mr. Bachelor, the yard-master. His immediate business at the time he was hurt was that of night switchman, working from six o'clock in the evening until seven o'clock in the morning, and he was employed most of his time at the east end of the yard from Fifth street east. His work was to 'tend' switches for trains going east and west, and see that they got water, and when his work was done he had orders from Bachelor to help the other men make up trains. The plaintiff says, in his testimony, when he went to work upon the yard, Bachelor employed him as night switchman; that there was no danger about that business; that Gregg, on the 16th of May, 1882, had general charge of the station, but not of the yard; that on the 17th of February previous, Gregg told him " not to undertake to couple cars;" that on the morning of that day he was helping a brakeman, and got caught by a car, and Bachelor and Gregg both came to him, and told him that was not his business,—that he should let the cars go, and attend to his business; that at about half-past five o'clock in the morning of the 16th of May, 1882, and about five minutes before he was injured, Etzcorn was coming out of the freight house with an engine and five cars, and had cut off the end car and

got up on top of it to hold it. Plaintiff then asked him where he wanted those cars. Etzcorn replied, " One in and one out;" to which plaintiff answered, " Then set the switch over, and motion the engineer ahead," and stepped in to uncouple the cars, pulled the pin, and laid it on the dead-wood. The cars were in motion at the time, going west, and he moved along between them as the cars moved, until he got ready to come out, when his right foot caught in the hole in the planks before mentioned, and held him. He looked back to see what held it, but did not have time to get his foot out before the brake struck him and knocked him down, and after being carried several feet, the car-wheel came upon his left leg, crushing it to the thigh, rendering amputation necessary. It further appears from the testimony of the plaintiff that at the time of the accident it was light; that he could see pretty well; that he did not know of the defect in the plank—if he had, he could have seen it; that he might have passed it a hundred times, and not have seen it; that it was of such a character, if his attention had not been called to it, he could not have seen it; that he never discovered any defect in the planking at that crossing before; that he had always regarded it as a good and proper crossing for the purpose and place ; and that he was familiar with the station grounds. The foregoing facts were all uncontroverted by the plaintiff, and most of them appeared in the plaintiff's own testimony.

The other testimony went strongly to show that the existence of a defective plank was known only to two of defendant's yard hands, and they both swear that they never had made the fact known to the company or to the yard or station masters; and Mr. Bachelor testifies that when he hired the plaintiff he gave him express instructions what he wished him to do ; " directed he should not pull pins, or do any coupling in any way;" that he forbade his doing this again in November following, and that he never countermanded that direction ; that there was other business in the yard for the plaintiff to do.

The plaintiff now seeks to recover the damages he has sus-

tained in the loss of his limb, alleging in the declaration negligence on the part of the defendant in suffering the defect in the plank described to continue unrepaired until it occasioned his injury, and averring no neglect on his part contributing to the accident.

The defendant, in making its defense, claimed

(1st) That the defect in the planking was a very slight one, not known by the company to exist at the time the injury occurred ; that the plaintiff was an employee of the company ; that his duties in the yard required him to look after such defects when they occurred, and that his particular business, and its locality, furnished him with as good, if not better, opportunities. to have known of the defect complained of than the occupation and duties of any other employee of the company.

(2d) That such defect, if one existed, in the planking, which caused his injury, if the result of negligence at all, was that of a fellow-servant, and of which the company had no previous notice, and was therefore a part of the risks which the plaintiff assumed when he entered the employment of the company as incident thereto.

(3d) That it was negligence on the part of the plaintiff to attempt to do what he did while the cars were in motion, and that such negligence was really the cause of the injury.

(4th) That what he did was in actual disobedience of the orders of the yard-master, under whose control and direction he was required to serve, as well as those of the station agent, and without the request of any one. That for these four reasons the plaintiff ought not to recover.

The undisputed proofs show in this case that the defect in the planking complained of was one which might occur any day from slightly misplacing a switch, or the accidental derailing of a truck-wheel, or from various other causes purely accidental; that the injury to the plank was so small as to escape the notice of all the persons in the yard except two, and even that of the plaintiff, who was daily within ten or twelve feet of it, from once to a dozen times a day, and it would appear that even the two persons who did see it did

not deem it of consequence enough to report it to the yard-master, or repair it themselves, it being their duty so to do if it was dangerous, and there is no pretense that the company had actual notice thereof.

There is no testimony to show, or tending to show, that any of the persons were careless, incompetent or unskillful when they were employed by the company and placed in charge of its business at Niles station; but on the contrary the undisputed evidence is that they were all very competent men, who had had long experience in all branches of the business. It would seem that the defendant had done its whole duty in the premises, and it is quite clear, I think, that the only ground upon which plaintiff can rest his claim must be that of negligence of a fellow-servant engaged in the same employment; and the rule is well settled that when the company uses due diligence in the selection of competent, skillful and trusty servants, it is not answerable in damages to one of them for any injury received by him in consequence of the carelessness of another, while both are engaged in the same service of the common master. *Farwell v. Boston & Worcester Railroad Corporation* 4 Met. 49: 2 Thompson on Negligence 924. A person "who engages in the employment of a railroad company for the performance of specified duties and services, for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such service," and these include the perils arising from the carelessness and negligence of those who are fellow-servants, or engaged in the same employment, and it is of little consequence of what grade the servants may be, except (as is well said by Chief Justice Cooley in his work on Torts) "as superior authority may render the negligence more dangerous, and consequently increase at least the moral responsibility of any other servant, who, being aware of the negligence, should fail to reprove it," (Cooley on Torts 544); and this doctrine is fully supported by the following authorities, among others: 2 Thompson on Negligence 927; *Gallagher v. Piper* 16 C. B. (N. S.) 679, 694; *Wigmore v. Jay* 5 Exch. 354; *Felt-*

*ham v. England* L. R. 2 Q. B. 33; *Chicago &c. R. Co. v. Murphy* 53 Ill. 336; *Summersell v. Fish* 117 Mass. 312; *O'Connor v. Roberts* 120 Mass. 227; *Zeigler v. Day* 123 Mass. 152; *Warner v. Erie Ry. Co.* 39 N. Y. 468, 470; *Coon v. Syracuse etc. R. Co.* 5 N. Y. 492; *Columbus &c. R. Co. v. Arnold* 31 Ind. 174; *Hard v. Vermont & Canada R. Co.* 32 Vt. 473; *O'Connell v. Baltimore & Ohio R. Co.* 20 Md. 212; *Ryan v. Cumberland Valley R. R. Co.* 23 Penn. St. 384; *Pittsburgh &c. R. Co. v. Devinney* 17 Ohio St. 197; *Morgan v. Railway Co.* L. R. 1 Q. B. 149; *Gilman v. Eastern R. Corp.* 10 Allen 233; *Lawler v. Androscoggin R. Co.* 62 Me. 463; *Quincy Mining Co. v. Kitts* 42 Mich. 34; *Michigan Cent. R. Co. v. Austin* 40 Mich. 247; *Day v. Toledo, C. S. & D. R. Co.* 42 Mich. 523; *Crispin v. Babbitt* 81 N. Y. 516: *Brick v. Rochester, N. Y. & P. R. Co.* 98 N. Y. 211; *McCosker v. Long Island R. Co.* 84 N. Y. 77; *Wright v. New York Cent. R. Co.* 25 N. Y. 565. It is said by Mr. Chief Justice Shaw, in speaking upon this subject: "We are not aware of any principle which should except the perils arising from the carelessness and negligence of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard, as the master." *Farwell v. Boston & Worcester Railroad Corporation* 4 Met. 49.

Especially is this true in this case, under the circumstances disclosed in this record; for it is shown to have been a part of the duty of the plaintiff to have discovered the defect in the planking complained of, and to have repaired the same, as well as that of the track-master.

I think it must be conceded that had the defendant not gone in between the cars while they were in motion, he would not have received his injury. He was not required to do this by any person, and it was most certainly no part of his duty so to do. It is claimed by counsel for plaintiff that plaintiff was acting under the direction of Etzcorn at the time the injury occurred. The evidence, however, does not support this claim. Etzcorn was that morning, he says, doing his own coupling and uncoupling; and the plaintiff says that he

(plaintiff) asked Etzcorn, as he was making a change of cars, "What next?" and Etzcorn replied, "One car in and one car out," and that this is all that was said; and Etzcorn says he did not ask plaintiff to do anything that morning,—did not ask him to help him. Clearly this talk shows no direction to plaintiff to uncouple the cars.

Usually the movement of cars while the brakeman is attempting to couple or uncouple them is under his direction, and contributory negligence on his part in his endeavor to make the coupling while the cars are in motion, or in failing to regulate the movement of approaching cars when it is within his power to do so by the exercise of ordinary care, has been held sufficient to prevent his recovery for injuries received. *Muldowney v. Illinois Cent. R. Co.* 36 Iowa 462; *Williams v. Iowa Central R. R. Co.* 43 Ia. 396; *Marsh v. South Carolina R. Co.* 56 Ga. 274, 277. I am inclined to the opinion, however, that the correct view is taken upon this subject in *Snow v. Housatonic R. Co.* 8 Allen 441. In that case the court held that if a brakeman cannot easily uncouple cars when the train is standing still, and in endeavoring to uncouple them when the train is in motion, he steps between the cars, and there meets with an injury which is caused by a want of repair in the road-bed, it cannot be ruled he is careless, as a matter of law, but the question is then one for the jury. *Belair v. Chicago &c. R. Co.* 43 Iowa 662.

We are relieved from further consideration of this subject, however, in the present case. It clearly appears by the record that the plaintiff's duties were those of switchman, and that when hired, and subsequently, he was ordered by those who had the authority to direct him what to do,—not to attempt to perform the kind of service in which he received his injury,—and that, in open violation of these orders, and without the direction of any person, he undertook to perform the hazardous work of uncoupling, which was fraught with such disastrous results. Under the circumstances and testimony undisputed, I think it must be held that the plaintiff necessarily took the risk; that it was his own voluntary act,

and the defendant cannot be held liable upon the facts appearing in this record.

These views render discussion of the other points made, unnecessary.

The judgment must be reversed and a new trial granted.

CAMPBELL, C. J. and CHAMPLIN, J. concurred.

MORSE, J. dissenting.   I think this case was properly submitted to the jury, and that the verdict should not be disturbed.   From the plaintiff's evidence, as I read the record, it appears that after he was ordered not to couple cars, he was told by the yard-boss, under whose orders he was acting on the 7th of May, that he "must help the boys in the morning;" that he wanted him to help John Etzcorn.   Plaintiff says to the yard-boss : "All right : you told me once that I should not do this work,—I had nothing to do with it."   The boss replied : "I cannot help it now.   The trains don't get off in the morning.   The South Bend train is late pretty nearly every morning.   We have not got men enough to get the cars ready.   You must help them."   This seems to be a plain command to plaintiff to do this work whenever the trains were late, and did not confine him to a single morning.   Plaintiff then helped the boys every morning, coupling and uncoupling cars, until the accident.

The testimony introduced on the part of the plaintiff— and we have nothing to do with the evidence on the behalf of the defendant in considering the question whether the case should have been submitted to the jury—tended to show that this defect had existed for a month.   That it was a dangerous break the sequel shows.   I think it was the duty of the yard-master to see to it that this track and the others, being almost constantly used in moving cars and coupling them in this yard, was in a safe condition, so that the lives of the men who were compelled to do the coupling on this ground by their employment, were not endangered, or their persons put in peril; and being in charge of the yard, with this duty

incumbent upon him, his negligence would be the negligence of the company.

The question whether he was negligent was, under the plaintiff's proofs, in my opinion, a question for the jury, as was also the negligence of the plaintiff.

The plaintiff, under his proofs, was entitled to go to the jury. The question as to whether he or the defendant's witnesses should be believed was also a matter for them to determine. They found in his favor, and I can find no error in the record.