COKE *v.* MICHIGAN CENTRAL RAILROAD CO.

RAILROADS—MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE OF
BRAKEMAN—VIOLATION OF RULE AGAINST COUPLING ON DEFEC-
TIVE CARS.

    Violating a rule of defendant railroad company, plaintiff,
    a brakeman, having notice that a freight car carried a
    defective automatic coupling, attempted to open the coup-
    ling by hand so as to make up the car as part of his
    train, although, under the provisions of defendant's rule,
    it should have been put out of the train; in an action
    for personal injuries a verdict for defendant by direction
    of the trial judge is sustained on the ground that plain-
    tiff was guilty of contributory negligence. OSTRANDER
    and MOORE, JJ., concurred on the ground that defend-
    ant's negligence, relied upon, was not the proximate
    cause of plaintiff's injury.[1]

Error to Ogemaw; Sharpe, J. Submitted April 9,
1913. (Docket No. 14.) Decided October 1, 1913.

Case by Russell E. Coke against the Michigan Cen-
tral Railroad Company for personal injuries. Judg-
ment for defendant on a verdict directed by the
court. Plaintiff brings error. Affirmed.

*Abbott & Abbott,* for appellant.

*George M. Humphrey (Cooley & Hewitt,* and
*Humphrey & Grant,* of counsel), for appellee.

KUHN, J. This action was brought by the plain-
tiff against the defendant to recover damages for in-
juries received on January 22, 1909, while in the em-
ploy of the defendant as a freight and yard brake-
man.

    [1] The question of a servant's disobedience to rules regulating
the work of coupling cars is treated in a note in 43 L. R. A. 364.

On the night of the accident, while in the yards at Grayling, Mich., the plaintiff was ordered to couple onto about 30 cars standing off the main line of the defendant company, and proceed with them to Bay City. However, as a passenger train was about due, the plaintiff received orders to proceed to the depot, and there received orders to back into the clear of what was known as "engine lead," in order to let the passenger train pass. The order to back into the "engine lead" also involved another order to pick up 10 cars of merchandise that were located on a sidetrack, No. 1. Upon attempting to back into "engine lead," it was discovered that the train was too long for the lead, and plaintiff was ordered to cut off the engine and head car and proceed with the same to sidetrack No. 1, where the 10 cars of merchandise were to be picked up. In order to comply with this order, the plaintiff undertook to uncouple between the first and second cars in the train by the use of the uncoupling devices with which the cars were equipped. He was on the left side of the train, and tried to pull the pin to make the uncoupling by using the lever at the head of the second car. This lever runs out on the end of the cars to the outside, so that the brakeman would not have to go between the cars to open the coupler. He tried it several times and jerked and pulled, and also signaled the engineer to start and back his train a number of times; but the uncoupling device would not work, and he then climbed over one of the cars to the opposite side of the train and made use of the lever on the head car, which worked and resulted in uncoupling the cars. Plaintiff then signaled the crew of the engine to go ahead in the direction of sidetrack No. 1, and, as soon as the engine and car passed out of view, stepped in between the tracks at the end of the car, and stood looking at the drawhead with his lantern on the wrist of his left hand. He placed his left hand

on the knuckle, and took hold of the pin in an effort to see if the pin could be released, and while thus engaged, through some misunderstanding of signals, the engine and car backed into and against the car which the plaintiff was examining, and plaintiff's left hand was caught between the drawheads of the two cars and severely injured. The accident occurred about 12:15 o'clock at night, and it was very dark and rainy.

Plaintiff's declaration counts upon a violation of Act No. 234 of the Public Acts of 1907 (3 How. Stat. [2d Ed.] § 6729 to 6731), which made it unlawful for the defendant to use on its lines within this State any car not equipped with couplers which could be coupled automatically by impact, and which could be uncoupled without the necessity of men going in between the ends of the cars. At the close of the plaintiff's case, the court directed a verdict for the defendant, and the question that now presents itself is whether, under all the evidence, the case should have been submitted to the jury.

The only evidence before the court was that given by the plaintiff himself. It was urged in the court below, and is also here, that the undisputed proofs conclusively show that plaintiff himself was guilty of negligence which contributed to his injuries. It was shown that one of the rules of the company, known as No. 629, provided as follows:

"Inasmuch as the couplers of cars or engines cannot be uniform in style, size, or strength, and are liable to be broken, and dangerous to those engaged in coupling them, all employees are enjoined, before coupling cars or engines, to examine and know the kind and condition of the drawhead, drawbar, bumper, link, and coupling apparatus, and are prohibited from placing in the trains any car with a defective coupling, until they have first reported its defective condition to and receive instructions from the yardmaster or conductor. Sufficient time is al-

lowed and may be taken by employees in all cases to make the examination required."

It appears by a writing signed by the plaintiff that he was furnished with a copy of the printed rules and regulations of the company, and that he had read rule 629, and had agreed to make himself familiar with it and govern himself by it.

It is claimed that plaintiff was, at the time of the accident, endeavoring to do his duty under the existing conditions, and that his first duty under this rule was to make an inspection of the defective coupler, and if he found it to be in improper condition, then to make the report as required by the rule. It appears that at the time of the accident the conductor of the train was at the depot, and the yardmaster in close proximity, as he was the first person to come to plaintiff's assistance after the accident. It is urged on the part of the defendant that the record does not warrant the claim made by plaintiff, and that as a matter of fact the plaintiff, knowing that the coupler was defective, went into the place of danger to attempt to make it possible to make a coupling with the defective car in order that it could be hauled to Bay City, and had no intention of notifying either the conductor or yardmaster, and was admittedly violating the rule. The testimony of the plaintiff with reference thereto was as follows:

On direct examination:

"I then gave the engineer the signal to go ahead. I stepped in after that, and the engineer went ahead. Then he went out of sight; he wouldn't have gone over 20 feet to go out of sight that night. It was very dark, rainy, foggy night. I then commenced to see if I could get this coupler open on the head end of the second car, so that when I went to couple on again I would have a coupler ready to couple onto, so I wouldn't have to stop and open the knuckle."

On cross-examination:

"After I had uncoupled, I gave the signal for the engine to go ahead, and they went out of sight. I had a lantern with me. After I gave the signal, and they started, I waited for them to pull away out of sight, which was about 20 feet, before I went in. I didn't hear the engine when it stopped.

"Q. Didn't pay any attention to that?

"A. No, sir.

"Q. Then you went right in front of this coupler, did you?

"A. Not direct in front; no, beside it.

"Q. I think you said you turned your back toward the engine?

"A. I did.

"Q. Well, if you turned your back toward the way the engine went, you were fronting the coupler, weren't you?

"A. I was fronting toward the car, but not direct in front of the coupler. I was alongside of the coupler. I was about even with the end of the coupler.

"Q. Now describe what you did with your hands, what you did?

"A. I placed my left hand on top of the knuckle, took hold of the top of the pin, and tried to work it up, at the same time pushing up with my left hand. I tried to pull up the pin.

"Q. Well, when you tried to do that, was that when you discovered that the coupler had something wrong with it?

"A. No, sir; I discovered that when I tried to uncouple from the other side. I discovered that the lever would work, but that the pin would not. The lever would work to a certain extent so far as the pin would allow it to go. I couldn't draw the pin with the lever. When I tried to work the pin up with my hand, I discovered that it was jammed and pounded up.

"Q. Well, didn't it suggest itself to you that that was an improper car to be hauled by the company?

"A. Yes, sir; it did.

"Q. You thought that the coupler was so defective that the car ought to be put out of the train?

"A. Yes, sir.

"Q. Did you tell anybody to put it out?

"*A.* No, sir; there wasn't anybody there to tell.

"*Q.* Why, I thought you said that Yardmaster Richardson was right there and helped you over to the depot after your injury?

"*A.* He came just at that time that I got hurt. He wasn't there at the time I was working on this knuckle.

"*Q.* Well, you know that he was round there?

"*A.* Well, I don't know just where he was, no. I had seen him before, and I knew that there was a yardmaster on duty there some place in the yard.

"*Q.* Why didn't you report it to the conductor?

"*A.* My conductor was in the depot getting orders.

"*Q.* Certainly, why didn't you go over and tell him there was a defective car there unfit to be hauled?

"*A.* Well, I was going to try first, and see if I couldn't get it open.

"*Q.* But you had determined in your own mind that it was not a fit car to be hauled, hadn't you?

"*A.* I had in a way, yes.

"*Q.* Why didn't you go and tell the conductor so?

"*A.* Well, I hadn't thought of it yet.

"*Q.* Hadn't thought of it?

"*A.* No, not yet, I hadn't.

"*Q.* What were you adjusting the knuckle for?

"*A.* To get it open, and have it open and ready to couple on when I come back to it.

"*Q.* Then you were going to couple those cars onto it?

"*A.* Yes, sir.

"*Q.* To the end of that defective car?

"*A.* Yes, sir.

"*Q.* What for, to haul it to Bay City?

"*A.* Yes, sir.

"*Q.* Why didn't you tell the conductor?

"*A.* Well, I hadn't thought of it yet.

"*Q.* You intended to leave it in the train and haul it to Bay City without calling anybody's attention to it?

"*A.* I was intending to speak to my conductor when I got a chance.

"*Q.* Well, then, when the engine and other car had left it, why didn't you report it and uncouple it to be taken out?

"*A*. I hadn't thought of that yet."

It seems to us that the irresistible conclusion from this evidence is that the defendant's contention is the correct one. At no time does he state that his purpose in going in between the tracks was to make the examination required by the rule, but does positively say that his purpose was to get the knuckle open, "and have it open and ready to couple on when I come back to it," although he admitted that he knew at the time that the coupler was so defective that the car ought to be put out of the train. Under the repeated rulings of this court, such conduct on the part of the plaintiff has been held to be such contributory negligence as to bar recovery. *Lyon* v. *Railroad Co.*, 31 Mich. 429; *Gardner* v. *Railroad Co.*, 58 Mich. 584 (26 N. W. 301); *Brennan* v. *Railroad Co.*, 93 Mich. 156 (53 N. W. 358); *Wilson* v. *Railroad Co.*, 94 Mich. 20 (53 N. W. 797); *Lendberg* v. *Mining Co.*, 97 Mich. 443 (56 N. W. 846); *Loranger* v. *Railway Co.*, 104 Mich. 80 (62 N. W. 137); *Whalen* v. *Railroad Co.*, 114 Mich. 512 (72 N. W. 323); *Fluhrer* v. *Railway Co.*, 121 Mich. 212 (80 N. W. 23); *Moyer* v. *Railroad Co.*, 159 Mich. 645 (124 N. W. 542); *Jones* v. *Railroad Co.*, 168 Mich. 1 (133 N. W. 993).

This conduct was also in violation of a penal statute of this State (section 6286, 2 Comp. Laws [3 How. Stat. (2d Ed.) § 6640]:

"It shall be the duty of every railroad corporation in this State to furnish to each of its employees of every grade a printed or written copy of its rules and regulations relative to their respective duties, and any conductor, engineer, servant or other employee of any such railroad corporation, who shall knowingly violate any of the printed or written rules or regulations of such company, shall be subject to a fine of not less than twenty-five dollars nor more than one hundred dollars, or to an imprisonment in the county jail not more than three months, or both

such fine and imprisonment, in the discretion of the court."

If he had performed the duty imposed upon him by the rule, and, as soon as he had determined that the coupler was defective, reported the fact to his conductor or yardmaster, the accident would undoubtedly not have occurred. The injuries are therefore directly attributable to his own negligence.

For the reasons stated, a verdict for the defendant was properly directed, and the judgment is affirmed.

STEERE, C. J., and McALVAY, BROOKE, STONE, and BIRD, JJ., concurred with KUHN, J.

OSTRANDER, J. *(concurring)*. It is alleged in the declaration that after effecting the uncoupling of the car plaintiff discovered that the coupling would not automatically adjust itself for recoupling;

"that it was the duty of plaintiff, pursuant to orders given him, to recouple the engine and other car to the said car in question, and thereby connect up his train for its departure."

It is further alleged that—

"Accordingly, when plaintiff observed that said defective coupling on said car would not automatically adjust itself so as to automatically couple onto the other cars to which the engine was attached, the plaintiff, as his duty required, undertook the work of adjusting the same by hand, and in his efforts so to do,"

—and while he was so employed, the engine and forward car were backed into the car upon which he was working. There is no dispute about the facts. Plaintiff claims that the duty he was performing is imposed by rule No. 629. The trial court was of opinion that the rule imposed no such duty. Upon the argument I was impressed that only by a technical and impracticable interpretation of the rule could it be said that plaintiff was forbidden by the rule to

make further examination of the coupler to ascertain whether the engine could be coupled to the car. Setting aside the rule, it would seem to be a proper thing for him to make the examination. There were 28 cars behind it on the siding, and, whether it should or should not be determined upon his report to carry the car to Bay City, it was necessary to move it in order to release the other cars. But the court also said, "There is no negligence shown on the part of the company that caused or contributed to his injury," and with this view I concur. Plaintiff, assuming that he was doing his duty, was injured, not because the coupler was defective, but because of what occurred after its condition was discovered. *Betterly* v. *Railroad Co*, 158 Mich. 385 (122 N. W. 635), is an instructive case.

I concur in affirming the judgment.

MOORE, J., concurred with OSTRANDER, J.