*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LARSON REAL ESTATE VENTURES, LLC,

        Plaintiff-Appellee,

v

NATIONS TITLE AGENCY OF MICHIGAN, INC,

        Defendant-Appellant,

and

ABBOT PARK, INC, DOUGLAS PARKS,
and JENNIFER LARNER,

        Defendants.

UNPUBLISHED
March 16, 2023

No. 359518
Ingham Circuit Court
LC No. 20-000018-CB

Before: GADOLA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

Defendant, Nations Title Agency of Michigan, Inc (Nations), appeals as of right the order of the trial court denying Nations' motion for summary disposition under MCR 2.116(C)(8), granting summary disposition to plaintiff, Larson Real Estate Ventures, LLC, under MCR 2.116(C)(9) and (10), and entering a money judgment against Nations in favor of Larson. We vacate the order of the trial court and remand for entry of an order granting Nations summary disposition.

## I. FACTS

The facts of this case essentially are undisputed. Larson obtained a money judgment against defendant, Douglas W. Parks, in the amount of $101,960.85 and recorded a judgment lien against Parks with the Ingham County Register of Deeds. At the time Larson obtained the judgment and recorded the lien, Parks owned an interest in real property located at 1224 N.

Magnolia Avenue in Lansing. Thereafter, Parks entered into a Buy Sell Agreement with his daughter, defendant Jennifer Larner, agreeing to sell the Magnolia property to her for $140,000.

Larner's mortgage lender retained Nations as the title insurance company for the transaction, and Nations agreed to act as escrow agent. The title examiner prepared and emailed a property report advising of the lien to Nations. Despite the property report advising of the judgment lien, Nations issued a title insurance commitment for the Magnolia property certifying that no judgment liens against Parks were identified. As the escrow agent, Nations received the mortgage funds for the purchase, closed the transaction, and paid the net proceeds of the sale to Parks.

Larson initiated supplemental proceedings in its action against Parks, adding Larner and Nations as defendants. In its supplemental complaint, Larson alleged claims of trespass to chattel and conversion against Larner and Nations, alleged fraud against Larner, and sought payment of $76,581.80. Larson thereafter obtained a default judgment against Larner in that amount. In its answer, Nations admitted that it acted as a closing agent for the transaction and in that capacity paid out the escrowed funds to Parks. Nations then filed a cross-claim against Larner and Parks seeking restitution and indemnity, and obtained a default judgment against Parks and Larner in the amount of $76,581.80.

Nations moved for summary disposition of Larson's supplemental complaint under MCR 2.116(C)(8) and (10) on the basis that a title insurer cannot be held liable in tort. Larson moved for summary disposition under MCR 2.116(C)(9) and (10), and MCR 2.116(I)(2), asserting that Nations breached its duty as an escrow agent and therefore was liable to Larson under a theory of negligence; Larson also asserted that Nations was judicially estopped from contesting its liability after obtaining a judgment against Parks and Larner for restitution and indemnity.

The trial court denied Nations' motion for summary disposition and granted Larson's motion for summary disposition, reasoning that as an escrow agent Nations had a duty to properly pay out the funds that it held. Nations then challenged the proposed order regarding the amount of damages. The trial court rejected Nations' objections to the proposed order, holding that Nations was judicially estopped from contesting the amount of damages after obtaining a judgment against Parks and Larner on the theory of indemnification. Nations now appeals.

I. DISCUSSION

Nations contends that the trial court erred by granting Larson summary disposition under MCR 2.116(C)(9) and (10), and by denying Nations summary disposition. We agree that Larson failed to state a legally sufficient claim against Nations, which no factual development could rectify, thereby entitling Nations to summary disposition under MCR 2.116(C)(8). See *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159-160; 934 NW2d 665 (2019).

A. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny a motion for summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). We also review de novo questions of law. See *Estate of Miller v Angels' Place, Inc*, 334 Mich App 325, 329; 964

NW2d 839 (2020). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the plaintiff's claim. *El-Khalil*, 504 Mich 159. When reviewing a grant or denial of summary disposition under MCR 2.116(C)(8), this Court considers the pleadings alone and accepts all factual allegations as true. *Id*. Summary disposition under MCR 2.116(C)(8) is warranted when the claim is so unenforceable that no factual development could justify recovery. *Id*. at 160.

A motion for summary disposition under MCR 2.116(C)(9) tests the sufficiency of the defendant's pleadings and is properly granted when, accepting all well-pleaded allegations as true, the defendant has failed to state a valid defense and no development of the facts could support denial of the plaintiff's claim. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582; 794 NW2d 76 (2010). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the plaintiff's claim and is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *El-Khali*, 504 Mich at 160. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), this Court considers the documentary evidence submitted by the parties in the light most favorable to the non-moving party. *El-Khalil*, 504 Mich at 160.

## B. CONVERSION AND TRESPASS TO CHATTEL

In its supplemental complaint, Larson alleged that Nations was obligated to pay the proceeds at closing to Larson by virtue of Larson's judgment lien against Parks, and that failure to do so was conversion and trespass to chattel. Under common law,[1] conversion is defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 346; 871 NW2d 136 (2015) (quotation marks and citations omitted). A defendant who wrongfully exerts dominion over property is not shielded from liability merely because the defendant acted in good faith or without knowing of the plaintiff's outstanding property interest. *Magley v M & W Incorporated*, 325 Mich App 307, 314-315; 926 NW2d 1 (2018). To establish a claim of trespass to chattel, the plaintiff must demonstrate that the defendant wrongfully exercised dominion or control over the plaintiff's property. See *Burns v Kirkpatrick*, 91 Mich 364, 365-366; 51 NW 893 (1892). Thus, both conversion and trespass to chattel require that the plaintiff establish that he or she had an ownership interest in the property in question.

In this case, Larson claims a right to the funds from the sale of the Magnolia property by virtue of its judgment lien, entitling Larson to payment under Michigan's judgment lien act (MJLA), MCL 600.2801 *et seq*. Specifically, the supplemental complaint alleges that Larson was entitled to payment of the funds under MCL 600.2819 and MCL 600.2807 and that Nations failed to pay the funds to Larson, thereby depriving Larson of its interest in the funds.

---

[1] Larson did not allege statutory conversion under MCL 600.2919a.

The MJLA defines a "judgment lien" as "an encumbrance in favor of a judgment creditor against a judgment debtor's interest in real property, including, but not limited to after acquired property." MCL 600.2801(c). When a judgment creditor records a notice of judgment lien with the register of deeds for the county in which the real property is located, the judgment lien attaches to the judgment debtor's interest in the real property. MCL 600.2803; *Thomas v Dutkavich*, 290 Mich App 393, 404; 803 NW2d 352 (2010). In this case, the parties do not dispute that Larson obtained a judgment against Parks that could be enforced by the recording of a judgment lien, and that Larson recorded the judgment lien in Ingham County, which then attached to Parks' interest in the Magnolia property.

Under the judgment lien act, upon the sale of the Magnolia property to his daughter, Jennifer Larner, Parks was obligated to pay Larson the amount due under the judgment. MCL 600.2819 provides:

> There is no right to foreclose a judgment lien created under this chapter. At the time the judgment debtor makes a conveyance, as that term is defined in section 35 of 1846 RS 65, MCL 565.35, of, sells under an executory contract, or refinances the interest in real property that is subject to the judgment lien, the judgment debtor shall pay the amount due to the judgment creditor, as determined under [MCL 600.2807(3)], to the judgment creditor.

With respect to the sale or refinancing of property to which a judgment lien has attached to the judgment debtor's interest, MCL 600.2807(3) provides:

> If property subject to a judgment lien recorded under this chapter is sold or refinanced, proceeds of the sale or refinancing due to a judgment creditor are limited to the judgment debtor's equity in the property at the time of the sale or refinancing after all liens senior to the judgment lien, property taxes, and costs and fees necessary to close the sale or refinancing are paid or extinguished.

This Court has held that "under the clear and unambiguous language of MCL 600.2819, the obligation or duty to pay the judgment creditor from real estate sale proceeds rests *solely* with the judgment debtor." *Thomas*, 290 Mich App at 409 (emphasis added). In *Thomas*, this Court concluded that because MCL 600.2819 imposes a duty to pay the judgment creditor at the time of sale only upon the judgment debtor, the purchaser in that case could not be held liable for the amount the judgment debtor owed to the judgment creditor. *Id*. This Court further held, however, that if a judgment lien is not paid under MCL 600.2819 at the time of the property's sale, the judgment lien is not discharged by the sale and remains attached to the property. *Id*. at 408, 411. This Court in *Thomas* observed that its conclusion was both (1) required by the statutory language, and (2) not unfair to the purchaser in that case because the purchaser had at least constructive notice of the recorded lien and chose to proceed with the purchase without demanding payment of the judgment creditor to extinguish the lien. *Id*. at 411. This Court reasoned:

> Despite the notice, Thomas [the purchaser] decided to proceed with the closing without demanding that payment be made to the judgment creditors, . . . so that the lien would be extinguished. Although the onus was on [the judgment debtor] under MCL 600.2819 to make the payment to the [judgment creditors], Thomas, as the

purchaser, certainly had the ability to direct and dictate where his funds would go as part of the closing settlement, at least to the extent that he could have chosen to walk away from the transaction had it not met with his satisfaction. . . . In a modern real estate transaction, it is difficult to conceive, given the general demands and requirements of new mortgages and title insurers and escrow agents, that a transaction would be completed and closed absent full discharge of outstanding liens, yet it did occur here. [*Thomas*, 290 Mich App at 411.]

As in *Thomas*, in this case, under MCL 600.2819, only the judgment debtor, Parks, was obligated to pay Larson, the judgment creditor, at the time the Magnolia property sold; no other person or entity was required to pay Larson, the judgment creditor. However, because Larner, the purchaser, did not direct Nations to pay Larson when dispersing the purchase funds, Larson's judgment lien was not discharged and continues to attach to the Magnolia property. See *Thomas*, 290 Mich App at 411.

This Court has held that when a defendant has no contractual or equitable obligation to disperse funds to the plaintiff, the plaintiff has not established ownership interest in the funds sufficient to support a claim for conversion. *Bodnar v St. John Providence, Inc*, 327 Mich App 203, 229; 933 NW2d 363 (2019). Here, Larson's only claim to the purchase funds of the Magnolia property is Larson's claim that its judgment lien against Parks entitled it to receive the purchase funds under the judgment lien act; Larson asserts no other ownership interest in the purchase funds. As discussed, however, although the judgment lien act obligated Parks to pay Larson at the time of sale, it did not impose a duty upon Nations to pay Larson. As a result, Larson did not establish an ownership interest in the sale proceeds that would give rise to a claim for conversion or trespass to chattel. In addition, Larson is in no worse position now than before the sale of the Magnolia property; Larson continues to have a judgment lien attached to the Magnolia property, just as before the sale. Larson thus cannot establish damages arising from the sale of the Magnolia property.

To summarize, Larson's only claim to the funds is its judgment lien against the property enforceable against Parks through the judgment lien act. The judgment lien act imposed upon Parks (but not Nations) a statutory obligation to pay Larson upon the sale of the Magnolia property. Larson has not established that Nations had a contractual or equitable obligation to disperse funds to Larson and therefore did not establish ownership interest in the funds sufficient to support a claim for conversion. *Bodnar*, 327 Mich App at 229. Without an ownership interest in the funds, Larson similarly failed to establish its claim of trespass to chattel. Additionally, Larson failed to demonstrate that it incurred damages as a result of the transaction that allegedly gave rise to conversion and trespass because Larson continued to hold the same lien in the Magnolia property after the transaction as it did before the transaction. Because Larson failed to state legally supportable claims of conversion and trespass to chattel, Nations was entitled to summary

disposition of those claims. The trial court therefore erred by failing to grant Nations summary disposition under MCR 2.116(C)(8).[2]

## C. NEGLIGENCE

In its supplemental complaint, Larson also alleged that as the escrow agent for the transaction for Parks and Larner, Nations was required either by statute, by common law, or by its contractual relationship with Parks and Larner, to properly disperse the proceeds of the sale of the Magnolia property, and that proper dispersal of the funds meant paying the funds to Larson because of Larson's judgment lien. Larson alleged that Nations' failure to disperse the funds to Larson at the closing was a breach of Nations' duty.

The trial court found that as the escrow agent for the transaction, Nations had both a statutory and common law duty to disperse the funds to Larson. The trial court reasoned that because Nations was acting as an escrow agent, under § 1207 of the Insurance Code, MCL 500.1207, which pertains to the fiduciary responsibility of an agent, Nations was required to pay the net proceeds from the sale to Larson, which had a valid recorded judgment lien. The trial court observed:

> As plaintiff points out, MCL 500.7304, allows, but does not require a title insurer to act as an escrow agent in the transaction. And there's no dispute in this case, no factual dispute that, in fact, Nations Title took on the role of escrow agent. MCL 500.1207, describes Nations Title['s] duties as escrow agent, and that statute says, uh, an agent is a fiduciary for all money received or held by the agent in his or her capacity as an agent. Failure by an agent in a timely manner to turn over the money that he or she holds in a fiduciary capacity to the person to whom it is owed is prima facie evidence of violation of the agent's fiduciary responsibility. End of quote.

The trial court also found that an escrow agent has a common law duty to pay a judgment lien creditor from the purchase funds dispersed at a real estate closing, though the trial court did not specify authority for that finding. The trial court reasoned that under *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157; 809 NW2d 553 (2011), the common law can create a separate and distinct duty from the statutory duty. In *Loweke*, our Supreme Court held that "a contracting party's assumption of contractual obligations does not extinguish or limit separately

---

[2] However, Nations' contention that because it is a title company it cannot be held liable in tort under Michigan law, is misplaced. Nations relies in part on *Wormsbacher v Phillip R Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009), in which this Court observed that Michigan law does not recognize that a title insurer or agent has "a professional duty of care to those who employ them, outside of their contractual obligations." *Id*. at 7-8, quoting *Mickam v Joseph Louis Palace Trust*, 849 F Supp 516, 521 (ED Mich, 1993). The discussion in *Wormsbacher*, however, refers to suits in tort against title insurers by their clients, and does not grant general tort immunity to title insurers. Moreover, in this case the trial court found that Nations breached its duty as an escrow agent, not as a title insurer, and Nations acknowledges that an escrow agent may be held liable in tort for breach of its duties under an escrow agreement.

existing common-law or statutory tort duties owed to noncontracting third parties in the performance of the contract." *Id*. at 159. In this case, the trial court reasoned:

> *Loweke* has . . . been used time and time again to support, not just a separate and distinct statutory duty, but also a common law duty, which can suffice under *Loweke* to create a separate and distinct duty. And . . . it defies belief that a professional escrow agent paying out the funds from the sale of property as in this case would not have a common law duty to properly pay out the funds particularly to a judgment creditor that had a validly recorded and . . . known to Nations Title judgment lien. The touchstone of duty under common law is foreseeability of harm, and, . . . one could easily analyze that situation under the common law as imposing a duty on the escrow agent to properly pay out the funds and the foreseeability of harm to the judgment creditor, . . . with the validly recorded and . . . known judgment lien. So, . . . whether we're talking the statute or whether we're talking common law, I'm satisfied that there is a duty, . . . [that ] Nations Title owed to plaintiff in this matter.

The trial court thus determined that because Nations was acting as an escrow agent it was obligated properly to disperse the funds at the closing, and that under the common law the proper payment of funds means that an escrow agent is obligated to pay a judgment creditor who has a valid judgment lien. We disagree.

There can be no liability in tort unless a defendant owed a duty of care to the plaintiff. *Hill v Sears, Roebuck, & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012). Although a person generally is not obligated to help or protect another, a duty of care may arise by virtue of a statute, a contractual relationship, or the common law. *Id*. at 660-661. Regarding duty arising from contract, an escrow agent is the agent of both parties to an escrow agreement. *Laurentide Leasing Co v Schomisch*, 382 Mich 155, 161; 169 NW2d 322 (1969). The duties that an escrow agent owes to its principal are those set forth in the escrow agreement, which is a contract between the parties. *Smith v First Nat Bank & Trust Co of Sturgis*, 177 Mich 264, 268; 440 NW2d 915 (1989). An escrow agent may be liable in tort for the negligent performance of its duties or breach of the fiduciary responsibilities it owes to its principal. *Id*. at 270.

In *Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004), the Court held that "the lower courts should analyze tort actions based on a contract and brought by a plaintiff who is not a party to that contract by using a 'separate and distinct' mode of analysis. Specifically, the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contract obligations." In *Loweke*, the Court clarified that under the separate and distinct analysis, "a contracting party's assumption of contractual obligations does not extinguish or limit separately existing common-law or statutory tort duties owed to noncontracting third parties in the performance of the contract." *Loweke*, 489 Mich at 172.

On appeal, Larson argues that it does not claim that Nations violated the judgment lien act, but rather that Nations had a duty as an escrow agent to properly disperse the purchase funds, and that Nations breached that duty by failing to disperse the purchase funds to Larson. The duty to disperse the funds to Larson, however, would only occur if Larson had a right to the dispersal. Because Larson only claims a right to the purchase funds by virtue of its judgment lien under the

judgment lien act, Larson was only entitled to dispersal of the funds if the judgment lien act dictated that result. As discussed, under the judgment lien act, no one other than Parks was obligated to pay Larson at the time of the sale of the Magnolia property. Thus, even assuming for the sake of argument that Nations' duty as an escrow agent, either statutory, contractual, or under common law, extended to Larson, Larson failed to establish that it was entitled to payment by Nations under the judgment lien act. Larson has no claim to the funds apart from its judgment lien, enforceable under the judgment lien act, and the act does not impose a duty upon anyone to pay the judgment debt other than the judgment debtor, Parks. The trial court incorrectly held that Nations breached a duty of care as an escrow agent by wrongfully failing to disperse the purchase funds to Larson absent Larson demonstrating entitlement to the dispersal.

D. JUDICIAL ESTOPPEL

Larson also contends that the trial court properly found Nations liable on the additional basis of judicial estoppel. We disagree.

Judicial estoppel is an equitable doctrine that generally prevents a party from prevailing in one phase of a case on an argument and relying upon a contradictory argument in another phase of the case. *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012). In its motion for summary disposition before the trial court, Larson argued that the issue of Nations' liability to Larson had been decided when Nations obtained a default judgment against Parks and Larner. On appeal, Larson argues that the trial court held that Nations thereby was judicially estopped from challenging the issue of its alleged liability.

A review of the record, however, indicates that the trial court was not referring to liability when it made its ruling regarding judicial estoppel, and instead made that ruling only regarding Nations' objection to the amount of damages. After the trial court determined Nations' liability, a subsequent hearing was held on the proposed order, during which Nations challenged the amount of damages sought. The trial court found that Nations was judicially estopped from challenging the amount of damages, and stated in relevant part:

> I did not address judicial estoppel at the original motion for summary disposition because I thought that the ruling that I made didn't necessitate it. Um, but in fact, judicial estoppel, another one of those things, those doctrines that attorneys love to argue about and they frequently misapply, I think applies absolutely one hundred percent to this case. It's just a perfect example of judicial estoppel. Um, the amount that, um, was sought in the summary disposition motion is the same amount that Nations Title told this Court that it was entitled to when it obtained a default judgment against the defendants, Larner and Parks. . . . [T]he court signed a default judgment based on Nations Title saying that was the amount of damages, and that's the sum certain that the plaintiff was requesting.

Contrary to Larson's assertions on appeal, there is no indication that the trial court was revising its original ruling on the motions for summary disposition to add judicial estoppel as an additional basis for its ruling on liability. Instead, the trial court's ruling regarding judicial estoppel applied only to Nations' objections to the proposed order, which related to the amount of damages.

Vacated and remanded for entry of an order granting Nations summary disposition. We do not retain jurisdiction.


/s/ Michael F. Gadola
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney