THOMAS v DUTKAVICH

Docket No. 293229. Submitted October 12, 2010, at Marquette. Decided
    October 28, 2010, at 9:05 a.m.

    Robert A. Thomas brought a quiet-title action in the Schoolcraft
    Circuit Court against Laverne and Marilyn Dutkavich and the
    Schoolcraft County Sheriff in which he also alleged slander of title.
    The Dutkaviches had previously obtained a judgment of approxi-
    mately $30,000 against Steve Pelletier. Despite his outstanding
    judgment debt, Pelletier purchased the real property at issue, a
    condominium unit, through a warranty deed recorded in January
    2007. In July 2007, the Dutkaviches filed a notice of judgment lien
    against the property. In September 2007, Pelletier and his wife,
    Kelly Jo Pelletier, executed a warranty deed transferring the
    property to Thomas. Although the proceeds of the sale were
    sufficient to satisfy the judgment, Pelletier failed to distribute any
    of the sale proceeds to the Dutkaviches. Several months later,
    following a request by the Dutkaviches, a notice of levy on real
    estate was executed and recorded by the Schoolcraft County
    Sheriff's Department. Thomas then filed suit. The Dutkaviches
    filed a counterclaim, asserting that Thomas should have directed a
    payment to them when he purchased the condominium and
    seeking a money judgment. Thomas moved for summary disposi-
    tion. The court, William W. Carmody, J., granted Thomas's motion
    for summary disposition, concluding that Thomas had no duty to
    ensure that the Dutkaviches were paid out of the sale proceeds.
    The court's order also provided that the notice of judgment lien
    was discharged and dismissed the sheriff from the action. The
    Dutkaviches appealed.

    The Court of Appeals *held*:

    1. Under the Michigan judgment lien act (MJLA), MCL
600.2801 *et seq.*, a judgment can be enforced by recording a
judgment lien on appropriate property. MCL 600.2803 provides
that if a judgment creditor records a notice of judgment lien with
the register of deeds for the county in which the property is
located, the judgment lien attaches to the judgment debtor's
interest in the property.

2. Under MCL 600.2807(1), a judgment lien does not attach to an interest in real property owned as tenants by the entirety unless the judgment was entered against both the husband and the wife. In this case, the judgment was entered against Steve Pelletier alone, but Kelly Jo Pelletier had only a dower interest in the property. The Pelletiers did not hold the property as tenants by the entirety. The Legislature did not protect those with only a dower interest in property from the filing of a judgment lien, and the judgment lien properly attached to the condominium regardless of Kelly Jo Pelletier's dower interest.

3. Under MCL 600.2819, the judgment debtor is obligated to pay the judgment creditor from the real estate sale proceeds. Because Thomas was not the judgment debtor, he was not obligated to pay the Dutkaviches, and the trial court properly dismissed the Dutkaviches' counterclaim for money damages.

4. The Legislature did not directly address the resulting status of a judgment lien when the judgment debtor, although capable of doing so, has failed to make a required payment to the judgment creditor under MCL 600.2819. However, related provisions in the MJLA indicate that a judgment lien remains attached to the property despite new ownership when a lien has not been fully discharged. The necessary corollary is that when no payment has been made to the judgment creditor from available real estate sale proceeds, the judgment lien remains attached to the property and is not dischargeable except upon full payment. Therefore, the trial court erred by discharging the lien, and Thomas's slander-of-title claim should have been dismissed.

5. Although the judgment lien remained attached to the property, MCL 600.2819 does not allow foreclosure of a lien created under the MJLA. However, the Dutkaviches might have been able to levy on the property under MCL 600.6018, which is the provision of the Revised Judicature Act traditionally governing the collection of judgments and executions against real property. Because the trial court failed to address the arguments raised by the Dutkaviches under MCL 600.6018, remand was necessary.

Affirmed in part, reversed in part, and remanded.

1. LIENS — JUDGMENT LIENS — ATTACHMENT — TENANTS BY THE ENTIRETY — DOWER INTEREST OF NONDEBTOR.

A judgment lien under the Michigan judgment lien act does not attach to an interest in real property owned as tenants by the entirety unless the judgment was entered against both the husband and the wife; however, the statute does not protect a woman who has only a dower interest in property from the filing and

attachment of a judgment lien when her spouse is the sole judgment debtor (MCL 600.2807[1]).

2. LIENS — JUDGMENT LIENS — SALE OF PROPERTY — PAYMENT REQUIRED BY JUDGMENT DEBTOR.

The judgment debtor is obligated under the Michigan judgment lien act to pay the judgment creditor from the proceeds of a sale of real estate to which a judgment lien had attached; the purchaser of the property is not obligated to pay the judgment creditor (MCL 600.2819).

3. LIENS — JUDGMENT LIENS — SALE OF PROPERTY — FAILURE OF THE JUDGMENT DEBTOR TO SATISFY THE JUDGMENT — NEW OWNER — LIEN STATUS.

A judgment lien recorded under the Michigan judgment lien act remains attached to the property and is not dischargeable if the judgment debtor has not made payment from the proceeds of a sale of the property despite the fact of new ownership of the property (MCL 600.2801 *et seq.*).

4. LIENS — JUDGMENT LIENS — FORECLOSURE.

There is no right to foreclose a judgment lien created under the Michigan judgment lien act (MCL 600.2819).

*Plunkett Cooney* (by *Mary Massaron Ross, Hilary A. Ballentine,* and *James J. Murray*) for Robert A. Thomas.

*Randolph B. Osstyn* for Laverne and Marilyn Dutkavich.

Amicus Curiae:

*Buckles & Buckles, PLC* (by *Michael H. R. Buckles*), and *Roger L. Premo* for the Michigan Creditors Bar Association.

Before: MURPHY, C.J., and BECKERING and M. J. KELLY, JJ.

MURPHY, C.J. Defendants Laverne and Marilyn Dutkavich appeal as of right the trial court's order granting summary disposition in favor of plaintiff, Robert A.

Thomas, with respect to his action to quiet title to real property, a condominium unit, and his claim of slander of title. The order granting summary disposition in favor of Thomas also effectively dismissed a counterclaim filed by the Dutkaviches. This appeal requires us to interpret the Michigan judgment lien act (MJLA), MCL 600.2801 *et seq.*, and to determine whether a judgment lien survives and can be foreclosed on after the judgment debtor's conveyance of the encumbered real property to a vendee who had record notice of the lien, but no available closing proceeds were distributed to the judgment creditor in whole or partial satisfaction of the underlying judgment. The Dutkaviches, who were the underlying judgment creditors, had sought to levy or foreclose on the property, which Thomas had purchased from the underlying judgment debtor, Steve Pelletier, without any proceeds going to pay off the judgment lien despite sufficient funds being available to discharge the lien. The trial court found that Thomas was not at fault for Pelletier's failure to use the closing proceeds to pay off the Dutkaviches, and the court ordered the discharge of the judgment lien. We hold that the MJLA, while not permitting the foreclosure of the judgment lien and not giving Thomas any statutory obligation to have made payment to the Dutkaviches, did require that the judgment lien remain attached to the property. We also hold, however, that outside the MJLA, the Dutkaviches may be able to levy on the property pursuant to MCL 600.6018, which is the traditional method of executing on realty to satisfy a judgment. A remand is necessary to explore the issue of levying pursuant to MCL 600.6018. Therefore, the trial court erred by discharging the judgment lien and erred by not considering MCL 600.6018. Consistently with our holding, the Dutkaviches' counterclaim seeking to hold Thomas personally liable was properly dismissed;

Thomas's slander-of-title claim should have been dismissed; Thomas's quiet-title count should have been dismissed with regard to his request that the court discharge the judgment lien; and, with regard to levy and foreclosure under the quiet-title count, Thomas was entitled to the favorable ruling relative to the MJLA, but levying under MCL 600.6018 needs to be examined on remand. Accordingly, we affirm in part, reverse in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 6, 2004, in the Delta County Circuit Court, the Dutkaviches obtained a judgment against Steve Pelletier in the amount of $29,183.[1] A warranty deed, executed on December 29, 2006, and recorded on January 24, 2007, indicates that Pelletier purchased the real property at issue, a condominium unit located in Schoolcraft County, from Miller Point Development, L.L.C. Pelletier is the only vendee named in the warranty deed. A future-advances mortgage, executed on December 29, 2006, and recorded on February 7, 2007, reflects that Pelletier, along with his wife Kelly Jo Pelletier, obtained a mortgage on the property from the State Savings Bank of Manistique (mortgagee bank).

On July 20, 2007, the Dutkaviches filed a notice of judgment lien with the register of deeds office in Schoolcraft County with respect to the condominium unit. The notice provided that the balance owing on the judgment had increased to $33,368. On September 12, 2007, a real estate closing was held in which Steve and

---

[1] We note that the notice of judgment lien reflects that the judgment was entered on December 6, 2003; however, the request and order to seize property and the notice of levy on real estate indicate that the judgment was entered on December 6, 2004. The judgment itself is not contained in the lower court record. The discrepancy does not affect our analysis and ruling.

Kelly Jo Pelletier executed a warranty deed conveying the property to Thomas. The warranty deed was recorded the following day. The mortgage on the property held by the mortgagee bank, with the Pelletiers as mortgagors, was discharged the day before the closing. According to the warranty deed and the closing statement, the sale price for the property was $53,000. The settlement information contained in the closing statement indicates that, after taking into account the payment of taxes, title insurance, and closing fees, the Pelletiers were paid $51,784.[2] None of the proceeds from the sale were distributed to the Dutkaviches; there was no effort to satisfy the judgment lien despite the undisputed fact that the notice of judgment lien had been recorded before the closing. The trial court record does not include any documentary evidence concerning conversations at the closing or how the closing was conducted, let alone evidence revealing why the parties decided to proceed without designating a payment for the Dutkaviches. The closing documentation reflects that Fox Real Estate, Inc., was involved in the transaction.

On January 18, 2008, pursuant to a request by the Dutkaviches, the Delta Circuit Court entered an order to seize property relative to the judgment, which now had grown to $33,556, given accruing interest and postjudgment costs. A report of collection activity under the order to seize property reveals that a deputy sheriff was unable to locate any personal property held by Steve Pelletier that exceeded the statutory exemption. About a week later, in February 2008, a notice of levy on real estate was executed and recorded by a deputy sheriff with the Schoolcraft County Sheriff's Department.

---

[2] The settlement information does not show that the mortgagee bank received any distribution from the sale proceeds and, as previously noted, the mortgage was discharged the day before the closing.

On March 2, 2009, Thomas filed the instant quiet-title action in the Schoolcraft Circuit Court against the Dutkaviches and the Schoolcraft County Sheriff (SCS). Count I of the complaint, which pertained to all defendants, alleged that Thomas had purchased the property from the Pelletiers, that Steve Pelletier, but not his wife Kelly Jo, was subject to the Delta Circuit Court judgment obtained in favor of the Dutkaviches; that the Dutkaviches had recorded the notice of judgment lien before the sale of the property to Thomas; and that the Dutkaviches, through the efforts of a deputy sheriff employed by the SCS, had recorded the notice of levy on real estate following the sale. Plaintiff further alleged, as part of count I, that he owned the property free and clear of the Dutkaviches' interest and that, under MCL 600.2819, there could be no foreclosure on the lien and Thomas could not be held liable to the Dutkaviches. MCL 600.2819 provides:

> There is no right to foreclose a judgment lien created under this chapter. At the time the judgment debtor makes a conveyance, as that term is defined in section 35 of 1846 RS 65, MCL 565.35, of, sells under an executory contract, or refinances the interest in real property that is subject to the judgment lien, the judgment debtor shall pay the amount due to the judgment creditor, as determined under [MCL 600.2807(3)], to the judgment creditor.

According to Thomas, because the notice of levy was recorded after he purchased the property and after Steve Pelletier no longer held any interest in the property, the notice of levy was invalid under the MJLA. In count II of the complaint, Thomas alleged slander of title against the Dutkaviches, claiming that they had refused to discharge the judgment lien despite his requests for discharge and that their refusal constituted malice. In his prayer for relief, Thomas asked the trial court to declare the judgment

lien and notice of levy void and order them discharged, to declare the warranty deed conveying the property to Thomas as superior to any interest held by the Dutkaviches, and to compensate Thomas for the damages and costs that he had incurred as a result of the slander of title.

The Dutkaviches filed a counterclaim, alleging that Thomas had failed to direct a payment to the Dutkaviches from the money being paid by Thomas to the Pelletiers at the closing, as was necessary to discharge the judgment lien. The Dutkaviches maintained that Thomas had paid the Pelletiers $51,784 at the closing and, therefore, there was more than enough money available from which Thomas could and should have paid the Dutkaviches. This claim sought a money judgment against Thomas.

Thomas moved for summary disposition, presenting an argument that paralleled the allegations in his complaint, as previously set forth. He also argued that it was improper for the Dutkaviches to have recorded the notice of judgment lien when the judgment was solely against Steve Pelletier and that property held as a tenancy by the entirety cannot be subject to a lien and levy on the basis of a judgment entered against only one of the spouses. The Dutkaviches responded by contending that the amount due under the judgment lien was not paid to them upon sale of the property as required by the MJLA. According to the Dutkaviches, discharge of the judgment lien would only be proper if the lien had been paid in full from the proceeds of the real estate transaction between Thomas and the Pelletiers. Therefore, Thomas was not entitled to summary disposition. The Dutkaviches also argued that the property had previously been deeded to Steve Pelletier in his name

only, and not to Steve and Kelly Jo Pelletier, and thus Thomas's argument premised on the existence of a tenancy by the entirety was inapplicable. Finally, the Dutkaviches asserted that they could levy on the property pursuant to MCL 600.6018, which is the traditional method to execute on realty. The SCS also moved for summary disposition, arguing in part that, when filing the notice of levy, he was acting in accordance with various statutory requirements and was acting in good faith and without malice.

At the hearing on the motions for summary disposition, the trial court initially entered a stipulated order as between Thomas and the SCS that discharged the notice of levy and resulted in the dismissal of the SCS from the case.[3] The trial court then proceeded to hold that Thomas had no duty under MCL 600.2819 to make sure that the Dutkaviches were paid out of the sale proceeds. The court, concluding that Thomas was not at fault, granted his motion for summary disposition without any mention of MCL 600.6018. Subsequently, an order was entered that provided that Thomas's motion for summary disposition was granted, the notice of judgment lien was discharged, and the order could be recorded with the register of deeds to effectuate the discharge.[4]

---

[3] Thomas's claim on appeal that the Dutkaviches joined the stipulation is not supported by the record.

[4] The trial court never specifically touched on the Dutkaviches' counterclaim at the hearing on the motions for summary disposition. But the court's finding that Thomas was without fault and had no duty relative to MCL 600.2819 would negate the counterclaim that Thomas should be held liable on a money judgment for not having directed payment of the sale proceeds to the Dutkaviches in order to satisfy the judgment lien. The final order subsequently entered by the trial court indicated that it resolved all pending claims and closed the case, which order necessarily encompassed the counterclaim.

## II. ANALYSIS

### A. APPELLATE ARGUMENTS

The Dutkaviches argue that payment in full is a prerequisite to discharging a judgment lien under the MJLA and there was no payment here whatsoever. They contend that the judgment lien was properly recorded before the Pelletiers sold the property to Thomas, that Thomas thus had constructive notice of the lien and was not a bona fide purchaser for value, and that the judgment lien was an appropriate cloud on Thomas's title, given that Thomas had failed to demand that the lien be discharged with proceeds from the sale. The Dutkaviches, while acknowledging that their underlying judgment was entered solely against Steve Pelletier, also maintain that the judgment lien properly attached to the property because Pelletier had purchased the property in his own name and the property was not held as a tenancy by the entirety. Next, the Dutkaviches assert that they could levy on the property pursuant to MCL 600.6018, even if they could not foreclose under the MJLA. Finally, the Dutkaviches argue that equity requires that they be paid the amount due on the judgment.

Thomas contends that MCL 600.2819 requires the judgment debtor alone to pay the judgment creditor with proceeds from a sale of the property in order to satisfy the judgment; there is no such duty with respect to the purchaser of the property, regardless of whether the purchaser has constructive notice of the judgment lien. Thomas also contends that equity does not favor the Dutkaviches, as they had available the remedy of foreclosing on the property before the sale, yet they failed to act until after Thomas acquired his interest in the condominium unit. Thomas further argues that

MCL 600.6018 is not applicable because the levy was recorded after he purchased the property. Finally, and in the alternative, Thomas maintains that the judgment lien did not properly attach to the property because the underlying judgment was solely against Steve Pelletier and the lien attempted to encumber property in which Kelly Jo Pelletier had a dower interest.

### B. STANDARD OF REVIEW

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Manuel v Gill*, 481 Mich 637, 643; 753 NW2d 48 (2008). We also review de novo issues of statutory construction. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

### C. PRINCIPLES OF STATUTORY CONSTRUCTION

In *McCormick v Carrier*, 487 Mich 180, 191-192; 795 NW2d 517 (2010), our Supreme Court recited the well-established principles of statutory construction:

> The primary goal of statutory construction is to give effect to the Legislature's intent. This Court begins by reviewing the language of the statute, and, if the language is clear and unambiguous, it is presumed that the Legislature intended the meaning expressed in the statute. Judicial construction of an unambiguous statute is neither required nor permitted. When reviewing a statute, all non-technical words and phrases shall be construed and understood according to the common and approved usage of the language, and, if a term is not defined in the statute, a court may consult a dictionary to aid it in this goal. A court should consider the plain meaning of a statute's words and their placement and purpose in the statutory scheme. Where the language used has been subject to judicial interpretation, the legislature is presumed to have

used particular words in the sense in which they have been interpreted. [Citations and quotation marks omitted.]

### D. DISCUSSION

The MJLA was enacted pursuant to 2004 PA 136 and made effective on September 1, 2004. Under the MJLA, a "judgment" is defined as including "a final judgment" of a "court of record of this state." MCL 600.2801(a)($i$). Thus, the judgment obtained by the Dutkaviches against Steve Pelletier in the Delta Circuit Court qualified as a judgment for purposes of the MJLA and could be enforced by the recording of a judgment lien on appropriate property. A "judgment lien" is defined as "an encumbrance in favor of a judgment creditor against a judgment debtor's interest in real property, including, but not limited to, after acquired property." MCL 600.2801(c). If a judgment creditor records a notice of judgment lien with the register of deeds for the county in which the real property is located, the judgment lien attaches to the judgment debtor's interest in the real property. MCL 600.2803. "The judgment lien attaches at the time the notice of judgment lien is recorded or, for after acquired property, at the time the judgment debtor acquires the interest in the property." *Id.* The notice of judgment lien must conform to the technical requirements of MCL 600.2805(1) and (2) and must be served on the judgment debtor in accordance with either MCL 600.2805(3) or (4).[5]

We shall first address the argument that the judgment lien never properly attached to the property because the judgment was against Steve Pelletier but the lien was recorded against property in which Kelly Jo Pelletier held a dower interest. "A judgment lien does

---

[5] Thomas does not argue that the Dutkaviches failed to comply with MCL 600.2805.

not attach to an interest in real property owned as tenants by the entirety unless the underlying judgment is entered against both the husband and wife." MCL 600.2807(1). There is no dispute that the Delta County judgment was entered solely against Steve Pelletier and that the warranty deed reflecting a conveyance of the property listed only Steve Pelletier as the purchaser or vendee.

"[A]n estate by entireties refers to a form of co-ownership held by husband and wife with right of survivorship[.]" *Lilly v Schmock*, 297 Mich 513, 517; 298 NW 116 (1941). "Our longstanding common law provides that, when a deed is conveyed *to a husband and wife*, the property is held as a tenancy by the entirety." *Walters v Leech*, 279 Mich App 707, 711; 761 NW2d 143 (2008) (emphasis added). A tenancy by the entirety may be created by a deed conveying property to a husband and wife "jointly," by a deed conveying property to a husband and wife as "joint tenants," or by a deed conveying property to a husband and wife "jointly and not as tenants in common[.]" 1 Cameron, Michigan Real Property Law (3d ed), § 9.13, p 327, citing *Goethe v Gmelin*, 256 Mich 112; 239 NW 347 (1931), *Dutcher v Van Duine*, 242 Mich 477; 219 NW 651 (1928), and *Hoyt v Winstanley*, 221 Mich 515; 191 NW 213 (1922).[6] Kelly Jo Pelletier was not named in the warranty deed that conveyed the property from Miller Point Development, L.L.C., to Steve Pelletier; therefore, no tenancy by the entirety was created. And there is no deed showing that Steve Pelletier ever subsequently conveyed the property to himself and Kelly Jo jointly.

---

[6] Although a conveyance of land made to two or more persons is generally construed to create an estate in common and not a joint tenancy, an exception exists when the conveyance is made to a husband and wife. MCL 554.44 and MCL 554.45.

Simply because Kelly Jo Pelletier executed the warranty deed, along with Steve Pelletier, with respect to the later conveyance to Thomas does not mean that the property had been held by Steve and Kelly Jo as tenants by the entirety. Rather, this was likely done because "the statute of frauds requires both the seller and his wife with a dower interest to sign a purchase agreement in order to create a valid contract for the sale of land." *Slater Mgt Corp v Nash*, 212 Mich App 30, 32; 536 NW2d 843 (1995).

With respect to the dower-interest argument, "dower is a longstanding historical right that preexisted even the formation of our nation and that has become embedded in Michigan . . . law." *In re Miltenberger*, 482 Mich 901, 904 (2008) (CORRIGAN, J., concurring). MCL 558.1 provides, "The widow of every deceased person, shall be entitled to dower, or the use during her natural life, of ⅓ part of all the lands whereof her husband was seized of an estate of inheritance, at any time during the marriage, unless she is lawfully barred thereof."[7]

"Dower may be relinquished or conveyed as provided by law." Const 1963, art 10, § 1. This constitutional provision "makes it clear that the drafters of the Michigan Constitution intended to recognize dower as a legitimate property interest." *In re Miltenberger Estate*, 275 Mich App 47, 56; 737 NW2d 513 (2007). The right of dower is a contingent estate that becomes vested on the death of the husband and is to be protected before and after vesting. *Oades v Std S & L Ass'n*, 257 Mich 469, 473; 241 NW 262 (1932). When a husband owns an estate of inheritance in real estate, "his wife has a dower interest in that property." *Slater Mgt*, 212 Mich App at 31. "The dower interest attaches on marriage

---

[7] Dower interests are also addressed in MCL 700.2202, part of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*.

and applies to land the husband owned before marriage and brings into the marriage as well as land acquired during the marriage." 1 Cameron, § 8.3, p 287. No sole act of a husband can prejudice his wife's right to dower. *Oades*, 257 Mich at 473. A husband cannot deprive his wife of her dower rights, and she can only be divested of those rights by an act of the state or by or in consequence of her own voluntary actions. *Greiner v Klein*, 28 Mich 12, 17 (1873).

The Legislature referred only to "tenants by the entirety" in MCL 600.2807(1) without any mention of a wife's dower interests or rights. Given the extensive statutory and constitutional history of dower rights, we cannot deem the failure by the Legislature to include a reference to dower interests in the MJLA as an oversight but rather as a conscious decision to only protect tenancies by the entirety from the filing of a judgment lien when one spouse was not a judgment debtor. If we were to hold that a judgment lien under the MJLA cannot attach to property in which a wife has only a dower interest when the wife was not subject to the underlying judgment, we would improperly be reading language into the statute that simply does not exist. *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002) ("A ... court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself.").

Furthermore, we fail to see how the recording of the judgment lien on the property, *in and of itself*, deprived or divested Kelly Jo Pelletier of any dower interest that she held under the law. There was no attempt to foreclose on the judgment lien before the sale of the property to Thomas, and we ultimately hold in this opinion that the judgment lien cannot be foreclosed on

under the MJLA, which is consistent with MCL 600.2819. Also, Kelly Jo Pelletier participated in the Pelletier-Thomas closing and executed the warranty deed conveying the property, thereby voluntarily extinguishing or relinquishing her dower interest. Const 1963, art 10, § 1; *In re Stroh Estate*, 151 Mich App 513, 516; 392 NW2d 192 (1986) ("No contract of sale or conveyance by a husband without his wife's signature will operate to divest her of her dower."). Indeed, even when we examine the issue at the point in time at which the judgment lien attached to the property, which was before the sale to Thomas, the worst case scenario from Mrs. Pelletier's perspective would be a sale or refinancing of the property resulting in a payment to the Dutkaviches under MCL 600.2819. However, she could fully protect her dower interest in either circumstance, as the sale or refinancing could not come to fruition until she was in full agreement with the terms of the transaction and executed the necessary documentation. In sum, we are not prepared to find a divestiture of a dower interest on the basis of the attachment of a judgment lien to property with respect to which a wife has a dower interest, but no liability on the underlying judgment, and when payment to a judgment creditor on a sale or refinancing is the only possible consequence flowing from the lien. Accordingly, the judgment lien here properly attached to the property regardless of any dower interest held by Kelly Jo Pelletier.

Next, we hold that the judgment lien must remain attached to the property and could not have been discharged by the sale of the property to Thomas. As indicated previously, MCL 600.2819 provides that when a judgment debtor sells an interest in the property subject to the judgment lien, "the *judgment debtor* shall pay the amount due to the judgment creditor, as determined under [MCL 600.2807(3)], to the judgment credi-

tor." (Emphasis added.) We first note that, under the clear and unambiguous language of MCL 600.2819, the obligation or duty to pay the judgment creditor from real estate sale proceeds rests solely with the judgment debtor, here Steve Pelletier. Therefore, Thomas had no such obligation, and the Dutkaviches' counterclaim seeking to hold him liable on a money judgment fails. The MJLA reflects that the Legislature did not specifically contemplate a judgment debtor capable of making the required payment to the judgment creditor under MCL 600.2819 but failing to do so, let alone directly address the resulting status of the judgment lien upon the failure. However, various statutes within the MJLA aside from MCL 600.2819 effectively answer these questions.

With respect to a sale or refinancing of the property, MCL 600.2807(3), which is cross-referenced in MCL 600.2819, provides:

> If property subject to a judgment lien recorded under this chapter is sold or refinanced, proceeds of the sale or refinancing due to a judgment creditor are limited to the judgment debtor's equity in the property at the time of the sale or refinancing after all liens senior to the judgment lien, property taxes, and costs and fees necessary to close the sale or refinancing are paid or extinguished.

Therefore, MCL 600.2807(3) contemplates situations in which a judgment debtor sells his or her property, but because of the limited equity in the property, the judgment lien may not be fully satisfied. When the funds available following a sale are insufficient to entirely satisfy the judgment lien, the MJLA requires that MCL 600.2807(3) be read in conjunction with MCL 600.2811, which provides in relevant part:

> If payment on a judgment lien is made from the judgment debtor's equity as described in [MCL 600.2807(3)]

and is not payment in full of the amount due on the lien, the judgment creditor or the judgment creditor's attorney shall record a *partial discharge of judgment lien* for the amount paid. [Emphasis added.]

Accordingly, even after a successful conveyance of the property to a vendee who takes fee simple title and the payment of some monies to the judgment creditor, if an outstanding balance remains on the judgment lien, the lien is only *partially* discharged and effectively continues to be an encumbrance on the property despite the new ownership. Furthermore, MCL 600.2813(2) also addresses a partial payment of the judgment lien when the equity in the property falls short of the amount owing on the lien:

If a judgment debtor has paid a judgment in full or has made a partial payment from equity as described in section [MCL 600.2807(3)], has sent a request [for discharge] under subsection (1), and is unable, after exercising due diligence, to locate the judgment creditor or the judgment creditor's attorney, the judgment debtor may record an affidavit that complies with this subsection with the register of deeds with whom the judgment lien is recorded. The judgment debtor shall state in the affidavit that the judgment debtor sent a request under subsection (1) to the judgment creditor or the judgment creditor's attorney and shall attach to the affidavit a copy of a written instrument that evidences payment of the judgment and a copy of the receipt for the certified mailing of the request. Recording the affidavit, written instrument, and receipt discharges the judgment lien completely or, *if payment is made from the judgment debtor's equity as described in [MCL 600.2807(3)] and is not payment in full of the amount due on the lien, partially to the extent of the amount paid.* [Emphasis added.]

Again, this language contemplates the continued attachment of a judgment lien on property despite new ownership when the lien has not been fully discharged.

The necessary corollary is that, when no payment whatsoever has been made to the judgment creditor from available real estate sale proceeds, as was the case here, the judgment lien remains attached to the property and is not dischargeable except upon full payment. If partial payment does not result in the full discharge of a judgment lien, no payment at all certainly cannot result in a discharge.

Although this outcome may appear unfair to Thomas at first glance, it is required by the statutory language and, moreover, Thomas had, at a minimum, constructive notice of the recorded judgment lien. See *Ameriquest Mortgage Co v Alton*, 273 Mich App 84, 93-94; 731 NW2d 99 (2006). Despite the notice, Thomas decided to proceed with the closing without demanding that payment be made to the judgment creditors, the Dutkaviches, so that the lien would be extinguished. Although the onus was on Steve Pelletier under MCL 600.2819 to make the payment to the Dutkaviches, Thomas, as the purchaser, certainly had the ability to direct and dictate where his funds would go as part of the closing settlement, at least to the extent that he could have chosen to walk away from the transaction had it not met with his satisfaction.[8] This might explain the Legislature's decision to allow judgment liens to remain attached to conveyed property when only partial payment on the lien was made. In such a scenario, the purchaser, having constructive notice of the lien, would have the ability and choice to not proceed with the closing and, if the purchaser decided to proceed, he or she would do so knowing that the judgment lien remained a cloud on the title and could be problematic. In

---

[8] For this reason and given the constructive notice of the judgment lien, Thomas's argument that his due process rights will be violated if the lien remains attached lacks merit.

a modern real estate transaction, it is difficult to conceive, given the general demands and requirements of new mortgagees and title insurers and escrow agents, that a transaction would be completed and closed absent full discharge of outstanding liens, yet it did occur here.

Our conclusion is further supported by MCL 600.2809. Under MCL 600.2809(1) through (4), a judgment lien expires five years after the date that it was recorded, unless the judgment itself expires beforehand, at which time the lien would also expire, or unless the lien is rerecorded, which a judgment creditor may only do once, not less than 120 days before the expiration date of the initial judgment lien. MCL 600.2809(6) addresses the extinguishment of a judgment lien, providing:

> A judgment lien is extinguished when 1 or more of the following are recorded with the office of the register of deeds where the judgment lien is recorded:
>
> (a) A discharge of judgment lien signed by the judgment creditor or the judgment creditor's attorney.
>
> (b) A certified copy of a satisfaction of judgment that has been filed with the court that issued the judgment.
>
> (c) A certified copy of a court order that discharges the judgment lien.
>
> (d) A copy of the judgment debtor's discharge in bankruptcy issued by a United States bankruptcy court and a copy of the bankruptcy schedule listing the judgment debt. This subdivision does not apply if an order entered in the judgment debtor's bankruptcy case determining that the debt is nondischargeable is recorded with the register of deeds.

Aside from the circumstance described in MCL 600.2809(6)(c), none of these events occurred in this case. With respect to MCL 600.2809(6)(c), there is of

course the trial court's order discharging the judgment lien. However, this provision cannot allow a judgment lien to be and remain discharged simply because the trial court so ordered when the order was subject to appeal and did not otherwise comply with the MJLA, as we have held. Accordingly, there is no statutory basis to discharge the judgment lien.

Despite the fact that the judgment lien must remain attached to the condominium unit, it is clear that the MJLA does not allow foreclosure of the lien. As indicated, MCL 600.2819 provides that "[t]here is no right to foreclose a judgment lien created under this chapter." The Legislature could not have been any clearer on the subject.[9] Thus, a purchaser may decide to proceed with a real estate transaction when the judgment lien has not been fully discharged, assuming that new mortgagees and title insurers allow this to occur, given that the lien cannot be foreclosed on. But doing so could create problems for the purchaser in the future if he or she seeks to sell the property, considering that a subsequent purchaser would likely be hesitant to buy clouded property. We do note that such a subsequent sale would not implicate MCL 600.2819 and the need to pay the judgment creditor because MCL 600.2819 only applies when the "*judgment debtor* makes a conveyance." (Emphasis added.)

The Dutkaviches present an argument under MCL 600.6018, claiming that this provision, which is not part of the MJLA, allows levying on the property if the conveyance between Thomas and the Pelletiers was fraudulent. MCL 600.6018 provides as follows:

---

[9] For this reason, we reject the argument that resort to equity is proper to allow foreclosure of the judgment lien. When a statute governs resolution of a particular issue, a court lacks the authority to invoke equity in contravention of the statute. *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590 n 65; 702 NW2d 539 (2005).

> All the real estate of any judgment debtor, including, but not limited to, interests acquired by parties to contracts for the sale of land, whether in possession, reversion or remainder, *lands conveyed in fraud of creditors*, equities and rights of redemption, leasehold interests including mining licenses, for mining ore or minerals, but not including tenancies at will, and all undivided interests whatever, are subject to execution, levy and sale except as otherwise provided by law. [Emphasis added.]

This provision is part of chapter 60 of the Revised Judicature Act (RJA), MCL 600.6001 *et seq.*, and traditionally governed the collection of judgments and executions against real property. *George v Sandor M Gelman, PC*, 201 Mich App 474, 477; 506 NW2d 583 (1993). "Under the scheme provided in chapter 60, the creditor must first obtain a judgment for the amount owed, then execute that judgment against the debtor's property." *Id.* We note that the MJLA provides that "[a] judgment lien is in addition to and separate from any other remedy or interest created by law or contract." MCL 600.2817. The Legislature did not repeal MCL 600.6018 and, therefore, the MJLA and MCL 600.6018 are two different mechanisms by which a judgment creditor can attempt collection on a judgment by going after real property. There are undoubtedly differences between the MJLA and MCL 600.6018, including, most significantly, that the MJLA does not allow foreclosure, but the MJLA also does not contain the many exemptions, restrictions, and procedural requirements associated with levying against real property under MCL 600.6018. See chapter 60 of the RJA, MCL 600.6001 *et seq.* The trial court never explored the issue of allowing the Dutkaviches to levy on the property under MCL 600.6018. Whether they can levy on the property under MCL 600.6018 and the rest of chapter 60 of the RJA requires a detailed examination of the statutory scheme

and proof of a fraudulent transfer. Remand is appropriate for development of the arguments and evidence. In the meantime, the judgment lien must remain attached to the property under the MJLA, although that lien cannot be foreclosed on.

### III. CONCLUSION

In sum, we hold that the MJLA, while not permitting foreclosure of the judgment lien and not giving Thomas any statutory obligation to have made payment to the Dutkaviches, requires that the judgment lien remain attached to the property. We also hold, however, that outside the MJLA, the Dutkaviches may be able to levy on the property pursuant to MCL 600.6018, which is the traditional method of executing on realty to satisfy a judgment. Remand is necessary to explore the issue of levying pursuant to MCL 600.6018. Therefore, the trial court erred by discharging the judgment lien and erred by not considering MCL 600.6018. Consistently with our holding, the Dutkaviches' counterclaim seeking to hold Thomas personally liable on a money judgment was properly dismissed; Thomas's slander-of-title claim, which pertained to the judgment lien, should have been dismissed; Thomas's quiet-title count should have been dismissed with regard to his request that the court discharge the judgment lien; and, with regard to levy and foreclosure under the quiet-title count, Thomas was entitled to the favorable ruling relative to the MJLA, but levying under MCL 600.6018 needs to be examined on remand.

Accordingly, we affirm in part, reverse in part, and remand. We do not retain jurisdiction. No party having fully prevailed, taxable costs are not awarded under MCR 7.219.