*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETITION OF WAYNE COUNTY TREASURER FOR FORECLOSURE.

WAYNE COUNTY TREASURER,

Petitioner-Appellee,

v

TANYA THOMPSON and NEW SEASONS COMMUNITY DEVELOPMENT CORPORATION,

Respondents-Appellants.

UNPUBLISHED
September 18, 2025
11:51 AM

No. 371065
Wayne Circuit Court
LC No. 21-007151-CH

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

PER CURIAM.

Persons whose properties were sold at tax-foreclosure sales after July 17, 2020, and who intend to recover any proceeds remaining from the sale, are required to notify the foreclosing governmental unit (FGU) of their intent by submitting Department of Treasury Form 5743 "by the July 1 immediately following the effective date of the foreclosure of the property." MCL 211.78t(2). This Court has held that the procedural requirements stated in MCL 211.78t, including the notice requirement, are constitutional. *In re Muskegon Co Treasurer for Foreclosure,* 348 Mich App 678; 20 NW3d 337 (2023). Like the respondents in *Muskegon Treasurer*, respondents in this case did not file the notice required by MCL 211.78t(2) by the July 1 deadline and, as a result, their claim for the proceeds was dismissed. On appeal, respondents raise most of the same arguments raised by respondents in *Muskegon Treasurer*. Because this Court has already decided these issues in a published, binding decision, we affirm.

-1-

# I. BACKGROUND

## A. LEGAL BACKGROUND

In 2020, the Michigan Supreme Court held that former owners of properties sold at tax-foreclosure sales for more than what was owed in taxes, interests, penalties, and fees have "a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties." *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 484; 952 NW2d 434 (2020). This right continued to exist after fee simple title to the properties vested with the FGU. The FGU's "retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of [Michigan's] 1963 Constitution," and the former owners were entitled to just compensation in the form of the return of the surplus proceeds. *Id*. at 484-485.

In response to *Rafaeli*, our Legislature passed 2020 PA 255 and 2020 PA 256, which were given immediate effect on December 22, 2020. 2020 PA 256 added MCL 211.78t to the General Property Tax Act (GPTA), MCL 211.1 *et seq*. MCL 211.78t provides the means for foreclosed property owners to claim and receive any applicable surplus from the tax-foreclosure sale of their former properties. In particular, former property owners whose homes were sold or transferred after July 17, 2020, and who intend to claim any surplus proceeds, must notify the FGU of their intention by completing and submitting a single-page form, Form 5743, by the July 1 immediately following the effective date of the foreclosure of their properties. If a former property owner provides the statutory notice, then no later than the January 31 immediately following the sale or transfer of foreclosed properties, the FGU must notify the claimant, among other things, whether there is a surplus and inform the claimant that a motion must be filed in the circuit court in the foreclosure proceeding to recover any remaining proceeds. MCL 211.78t(3)(k). Notably, a claimant's responsibility to file a notice is triggered after foreclosure proceedings, not after the foreclosed home has been sold or transferred. The FGU's notice requirements are triggered after the sale or transfer of a foreclosed home.

## B. FACTUAL BACKGROUND

Thompson owned the subject real property in Wayne County and fell behind on her property taxes. Petitioner, the FGU for Wayne County, petitioned the trial court to foreclose on the subject property. An uncontested judgment of foreclosure was entered on March 30, 2022, thus triggering respondents' obligation to file a notice by July 1, 2022. It is undisputed that the property was sold at auction and a portion of the proceeds were applied to the delinquent property taxes, interest, penalties, and fees. It is also undisputed that respondents did not complete a notice of intent form, Form 5743, to claim an interest in the remaining proceeds after the sale by the July 1, 2022 statutory deadline.

Instead of following the procedure set by statute, respondents simply moved in the circuit court to compel petitioner to disburse any remaining proceeds from the tax-foreclosure sale. Petitioner opposed the motion because respondents never filed Form 5743 and, as a result, never became eligible claimants. Because respondents missed the statutory deadline, petitioner argued that they were not entitled to remaining proceeds and requested that the motion be denied.

Respondents filed a supplemental response arguing they were entitled to the remaining proceeds because MCL 211.78t is unconstitutional. Respondents asserted it was a violation of their due-process rights, as well as an unconstitutional taking, for petitioner to retain the remaining proceeds. Further, they contended the July 1, 2022 deadline to file Form 5743 was unconstitutional because the remaining proceeds did not yet exist. Respondents also asserted the retention of a 5% sales commission fee was a separate unconstitutional taking.

Petitioner opposed the supplemental response, asserting that the constitutional arguments were meritless. Petitioner contended MCL 211.78t was the exclusive mechanism to obtain remaining proceeds, but respondents failed to file Form 5743 despite being provided with the link to access the claim form online.

After a hearing, the trial court issued an opinion and order denying the motion because respondents did not file the required notice under MCL 211.78t. Relying on this Court's decision in *Muskegon Treasurer*, the trial court noted the analogous facts and concluded the statute was the exclusive mechanism for former property owners to recover remaining proceeds. The trial court determined the motion by itself, without the requisite notice being filed, was insufficient to recover remaining proceeds. Instead, the plain language of MCL 211.78t also required the timely filing of Form 5743. This requirement was not an unconstitutional restraint on respondent's rights or an unconstitutional taking of property. The trial court further concluded that relief under a constructive trust theory is not available because there was no allegation that the foreclosure proceedings were unlawful. Last, the trial court declined to address respondents' argument regarding the 5% sales commission fee because the fee did not apply to respondents' case.

Respondents now appeal.

## II. ANALYSIS

On appeal, respondents assert that MCL 211.78t is not the exclusive means of recovering surplus proceeds. If it is, then respondents contend that the statute results in an unconstitutional taking without just compensation and violates due-process protections, and the July 1 deadline should not be enforced. Respondents further argue the imposition of a constructive trust to prevent petitioners' unjust enrichment is warranted. We do not find any of these arguments persuasive.

### A. STANDARDS OF REVIEW

"With respect to questions of law—including the interpretation and application of constitutional provisions and statutes—this Court reviews these de novo." *Muskegon Treasurer*, 348 Mich App at 687. "The constitutionality of a statute, which must be determined on the basis of the provisions of the act itself, is also a question of law that we review de novo on appeal." *Whitman v Lake Diane Corp*, 267 Mich App 176, 179; 704 NW2d 468 (2005).

> [T]his Court accords deference to a deliberate act of a legislative body, and does not inquire into the wisdom of its legislation. The decision to declare a legislative act unconstitutional should be approached with extreme circumspection and trepidation, and should never result in the formulation of a rule of constitutional law broader than that demanded by the particular facts of the case rendering such a pronouncement necessary. Every reasonable presumption or intendment must be

indulged in favor of the validity of the act, and it is only when invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the Constitution that a court will refuse to sustain its validity. [*Bonner v City of Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014) (cleaned up).]

"This Court also reviews de novo whether the trial court properly selected, interpreted, and applied the relevant statutes." *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016).

Although respondents do not challenge the denial of the motion and, instead, argue that MCL 211.78t is unconstitutional, it is noted, "[i]n reviewing the circuit court's resolution of a motion under MCL 211.78t, this Court reviews factual findings for clear error." *Muskegon Treasurer*, 348 Mich App at 687. "Whether a specific party has been unjustly enriched is generally a question of fact." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). "However, whether a claim for unjust enrichment can be maintained is a question of law, which we review de novo." *Id*. Finally, we review de novo a trial court's dispositional ruling on an equitable matter." *Id*. .

## B. EXCLUSIVITY OF MCL 211.78t

Respondents assert that MCL 211.78t is not the exclusive means of recovering surplus proceeds, arguing that *Muskegon Treasurer* was wrongly decided. Respondents concede that this Court is bound by *Muskegon Treasurer*, see MCR 7.215(J)(1), but request this Court to issue a conflict opinion so that, under MCR 7.215(J)(2), a special panel may review the holding of *Muskegon Treasurer*. Respondents have not identified any errors in this Court's reasoning in *Muskegon Treasurer*; they merely advance the same arguments that were expressly considered and rejected by *Muskegon Treasurer*. Our Supreme Court denied the former owners' request for leave to appeal in *Muskegon Treasurer*, 11 NW3d 474 (Mich, 2024), and we have no reason to reject *Muskegon Treasurer*.

## C. TAKINGS VIOLATION

Respondents assert that petitioner's retention of surplus proceeds amounted to an unconstitutional taking. We disagree.

Takings Clauses in the United States and Michigan Constitutions prohibit taking private property for public use without just compensation. US Const, Ams V and XIV; Const 1963, art 10, § 2. These provisions, however, "do not prevent the government from establishing rules requiring property owners to take an affirmative act to preserve their rights in property." *In re Barry Co Treasurer*, ___ Mich App ___, ___; ___ NW3d ___ (Docket No. 362316) (2024); slip op at 4. There is no compensable taking when there exists "a statutory path for property owners to recover surplus proceeds, but the property owners failed to avail themselves of that procedure." *Muskegon Treasurer*, 348 Mich App at 700, citing *Nelson v New York City*, 352 US 103, 110; 77 S Ct 195; 1 L Ed 2d 171 (1956).

Respondents assert that *Muskegon Treasurer* has limited applicability because, unlike the respondents in that case, respondents' arguments here focus on the specific language of the Michigan takings clause. "Although the courts of this state have applied the state and federal Takings Clauses coextensively in many situations, this Court has found that Const. 1963, art. 10,

§ 2 offers broader protection than do U.S. Const, Ams V and XIV." *Muskegon Treasurer*, 348 Mich App at 699-700 (cleaned up). Article 10, § 2 provides: "Private property shall not be taken for public use without just compensation therefore being *first* made or secured in a manner prescribed by law." (Emphasis added.) Respondents assert that Article 10, § 2 required FGUs to provide compensation when the surplus proceeds were realized, i.e., after the tax-foreclosure sale of the property.

Respondents argue that their unconstitutional takings claim did not accrue until *after* the foreclosure sale, when the sum certain of surplus proceeds could be calculated. As a result, the statutory procedure, which requires respondents to submit Form 5743 before the sale takes place, was unconstitutional because just compensation was not provided before the funds were taken. This argument is meritless. Securing just compensation before the taking is precisely what MCL 211.78t accomplishes. Petitioner is required to provide notice to petitioner after obtaining a judgment of foreclosure—before the foreclosure sale. Respondent then has the responsibility to provide notice of intent to claim any surplus proceeds resulting from sale or transfer of the property. It is immaterial that the notice requirements occur before the sum of any surplus proceeds are determined—the procedure was in place to ensure just compensation *before* the property was taken, thus satisfying Article 10, § 2. As recognized in *Muskegon Treasurer*:

> the right at issue here is not a novel or uncertain one that springs into existence only after a forfeiture and sale. The right to collect proceeds remaining after the tax-foreclosure sale of property existed under English common law, was "firmly established in the early years of Michigan's statehood," and was a common-law right routinely understood to exist by the ratifiers of the Michigan Constitution in 1963. *Rafaeli*, 505 Mich at 462-464; 472, 952 NW2d 434. Although respondents may not have had a compensable claim before the tax-foreclosure sale generated a surplus, the right to collect excess proceeds existed before the tax-foreclosure sale. As the *Rafaeli* Court explained, "While plaintiffs' takings claim was not compensable until their properties sold for an amount in excess of their tax debts, that lack of an immediate right to collect the surplus proceeds does not mean that plaintiffs had no right to collect the surplus proceeds at all." *Id*. at 476-477, 952 NW2d 434. [*Muskegon Treasurer*, 348 Mich App at 698.][1]

This Court analyzed the takings arguments under the Michigan Constitution in *Muskegon Treasurer* and *Barry Treasurer*, and found that the respondents did not have a compensable takings claim. In both cases, this Court reasoned that respondents never suffered an uncompensated taking because the Legislature provided a statutory pathway for claimants to recover any surplus proceeds due them, the petitioner followed the statutory scheme, and the respondents failed to take the

---

[1] Respondents cite to our Supreme Court decisions in *Bauserman v Unemployment Ins Agency*, 503 Mich 169; 931 NW2d 539 (2019) and *Bauserman v Unemployment Ins Agency*, 509 Mich 673; 983 NW2d 855 (2022) for their accrual of a constitutional right argument. However, we find these cases inapposite here, where the right to surplus proceeds existed before the tax-foreclosure sale took place.

minimally burdensome first step toward recovery by filing a notice of intent that was timely under § 78t(2). "So long as the statutory scheme adopted by our Legislature comports with due process—as MCL 211.78t does—whether such a scheme makes sense, or whether a 'better' scheme could be devised, are policy questions for the Legislature, not legal ones for the judiciary." *Muskegon Treasurer*, 348 Mich App at 698, citing *D'Agostini Land Co, LLC v Dep't of Treasury*, 322 Mich App 545, 560, 912 NW2d 593 (2018). Because the respondents failed to follow the statutory pathway provided to recover any surplus proceeds, they could not then claim an unconstitutional taking.[2]

Respondents' reliance on *Rafaeli*, 505 Mich at 476-477, 482, to assert no claim for remaining proceeds may exist until a foreclosed property is sold is misguided. *Rafaeli* was decided before the enactment of 2020 PA 255 and 2020 PA 256, which "codif[ied] and g[ave] full effect to the right of a former holder of a legal interest in property to any remaining proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes[.]" 2020 PA 256, enacting § 3. The conclusions in *Rafaeli* were made without consideration of the amendments to the GPTA and are not relevant or helpful to the outcome in this matter. On this issue, this Court explained in *Muskegon Treasurer*:

> The *Rafaeli* Court did not find *Nelson* helpful because *Nelson* did not speak to the factual situation in *Rafaeli*; it did not tell our Supreme Court what occurs when the statutes governing foreclosure make no mention of, or expressly preclude, a divested property owner's right to the surplus proceeds, but the divested property owner establishes a property right to the surplus proceeds through some other legal source, such as the common law. *Nelson* did not provide guidance because the statutes governing foreclosure in *Rafaeli* did not acknowledge former property owners' rights to recover surplus, let alone provide a means for recovery.
>
> Nor did *Rafaeli* prevent[] the Legislature from enacting legislation that would require former property owners to avail themselves of certain procedural avenues to recover surplus proceeds. Just the opposite—the Court merely held 'that the Legislature may not write this constitutionally protected vested property right out of existence. In response to *Rafaeli*, our Legislature rectified this constitutional infirmity with 2020 PA 256, and [the] respondents have not shown that the act wrote their constitutionally protected property rights out of existence by imposing a notice requirement. [*Muskegon Treasurer*, 348 Mich App at 701-702 (cleaned up).]

Respondents further argue the retention of a 5% sales commission by the FGU under MCL 211.78t(9) is a separate unconstitutional taking. This "Court need not consider the claim, however,

---

[2] Respondents argue that *Muskegon Treasurer* improperly characterized the failure to file a notice of intent form, Form 5743, as a forfeiture and ran afoul of the United States Supreme Court's opinion in *Culley v Marshall*, 601 US 377; 144 S Ct 1142; 218 L Ed 2d 372 (2024), which disapproved of the use of "other means," such as forfeiture, "to avoid paying just compensation[.]" But *Culley*, which involved a civil forfeiture after a drug-related offense, is inapposite to this case.

because [the] respondents were never subject to the sales commission, given their failure to make a valid claim in the first place." *Id*. at 703. Because respondents failed to file a notice of intent form, this statutory provision never applied to respondents, and we also decline to consider respondents' argument.[3]

## C. DUE-PROCESS VIOLATIONS

Respondents contend MCL 211.78t violates procedural due process under the Michigan and United States Constitutions because the remaining proceeds are a property interest, which merit greater procedural protections. We disagree.

"Under both the Michigan and United States Constitutions, no person may be deprived of life, liberty, or property without due process of law." *Id*. at 695; see also US Const, Ams V and XIV; Const 1963, art 1, § 17. "These constitutional provisions guarantee more than procedural fairness and have a substantive component that protects individual liberty and property interests against certain government actions regardless of the fairness of the procedures used to implement them." *Cummins v Robinson Twp*, 283 Mich App 677, 700; 770 NW2d 421 (2009) (cleaned up). "[F]ormer property owners whose properties were foreclosed and sold to satisfy delinquent real-property taxes, have a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties." *Rafaeli*, 505 Mich at 484. "Due process is not a one-size-fits-all concept. It is, rather, flexible and calls for such procedural protections as the particular situation demands." *Muskegon Treasurer*, 348 Mich App at 695 (cleaned up).

As this Court summarized:

> The statutory scheme set up by our Legislature and followed by [the] petitioner satisfies due process. The notices informed [the] respondents of their right to claim any excess proceeds and told them how to express their intent to exercise that right. First, a former owner is given predeprivation notice of a foreclosure and sale to satisfy unpaid taxes and associated costs. Second, the former owner is given several months to file a form indicating an intent to seek the remaining proceeds (if any) that might exist after the sale and satisfaction of taxes and related costs. If the statutory scheme is followed by the former owner and FGU, there will be no constitutional deprivation like the one in *Rafaeli*. This is all that due process requires in this situation. [*Muskegon Treasurer*, 348 Mich App at 696.]

---

[3] Respondents also argue the FGU should not be allowed to retain interest "generated from the property owners' surplus proceeds." But this reflects improvements or changes to the statute, which are policy questions, as opposed to errors for this Court to correct. See *Muskegon Treasurer*, 348 Mich App at 697 ("So long as the statutory scheme adopted by our Legislature comports with due process—as MCL 211.78t does—whether such a scheme makes sense, or whether a 'better' scheme could be devised, are policy questions for the Legislature, not legal ones for the judiciary.").

To the extent respondents argue they could not claim the remaining proceeds until after the auction sale, respondents did not contest the foreclosure proceedings in this case. Instead, the uncontested judgment of foreclosure was entered on March 30, 2022. This Court made clear that, "[t]he statutory scheme set up by our Legislature . . . satisfies due process," and "[i]f the statutory scheme is followed by the former owner and [the] FGU, there will be no constitutional deprivation like the one in *Rafaeli*." *Id*. at 696. Further, "[s]o long as the statutory scheme adopted by our Legislature comports with due process—as MCL 211.78t does—whether such a scheme makes sense, or whether a 'better' scheme could be devised, are policy questions for the Legislature, not legal ones for the judiciary." *Id*. at 697.

Regarding the argument that the right to recover remaining proceeds exists only after the auction sale and the notice sent by the FGU before the sale is inadequate, this Court stated: "[The] [p]etitioner's notices were not rendered inadequate by the fact that they were sent to [the] respondents before the tax-foreclosure sale—if anything, the earlier notice was an even greater safeguard of respondents' rights than the postsale notice that they advocate for now." *Id*. at 698. This Court's holding in *Muskegon Treasurer* applies squarely here.

E. CONSTRUCTIVE TRUST

Respondents argue the trial court erred by dismissing the request to impose a constructive trust over the remaining proceeds. We disagree.

> A constructive trust may be imposed where such trust is necessary to do equity or to prevent unjust enrichment. . . . Hence, such a trust may be imposed when property has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property. . . . Accordingly, it may not be imposed upon parties who have in no way contributed to the reasons for imposing a constructive trust. The burden of proof is upon the person seeking the imposition of such a trust. [*Kammer Asphalt Paving Co, Inc v East China Twp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993) (cleaned up).]

"When a statute governs resolution of a particular issue, a court lacks the authority to invoke equity in contravention of the statute." *Thomas v Dutkavich*, 290 Mich App 393, 413 n 9; 803 NW2d 352 (2010). MCL 211.78m(8) dictates how FGUs handle money obtained from tax-foreclosure sales. In relevant part, it states: "A [FGU] shall deposit the proceeds from the sale of property under this section into a restricted account. . . . The [FGU] shall direct the investment of the account. The [FGU] shall credit to the account interest and earnings from account investments." MCL 211.78m(8).

Recently, this Court addressed a similar argument "that a constructive trust should be imposed over [a respondent's] remaining proceeds to prevent [the] petitioner's unjust enrichment," in *In re State Treasurer for Foreclosure*, unpublished per curiam opinion of the Court of Appeals,

issued August 29, 2024 (Docket No. 365005), p 5.[4]  This Court stated: "An FGU's compliance with the statutory scheme cannot provide grounds for imposing a constructive trust." *Id*.  This Court continued: "[A]n equitable remedy such as the imposition of a constructive trust would contravene the Legislature's clearly stated intent and essentially nullify MCL 211.78t." *Id*.  Similarly, this Court stated in another recent unpublished decision, "[b]ecause the Legislature provided a duly enacted, constitutionally valid statutory means of recovering proceeds remaining from a tax-foreclosure sale in excess of the tax debt, restitution under a theory of unjust enrichment is not warranted." *In re Alger Co Treasurer for Foreclosure*, unpublished per curiam opinion of the Court of Appeals, issued September 12, 2024 (Docket Nos. 363803 and 363804), p 12; see also *In re Manistee Co Treasurer*, unpublished per curiam opinion of the Court of Appeals, issued June 13, 2024 (Docket No. 363723), p 8 (declining to view the petitioner's retention of surplus proceeds as unjust enrichment and declining "to apply a constructive trust or to order a money judgment.").

## III.  CONCLUSION

Respondents fail to assert valid constitutional claims for a takings violation or a procedural due-process violation.  MCL 211.78t is the exclusive mechanism for obtaining remaining proceeds, and this Court's holding in *Muskegon Treasurer* is binding, controlling precedent.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Sima G. Patel
/s/ Kathleen A. Feeney

---

[4] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).