# STATE OF MICHIGAN

# COURT OF APPEALS

INGHAM COUNTY TREASURER,

               Petitioner-Appellant,

v

GORDON SMALL, BEVERLY BACH, and
DENNIS RIGBY,

               Respondents-Appellees.

UNPUBLISHED
January 12, 2017

No. 329804
Ingham Circuit Court
LC No. 11-000675-CZ

Before: WILDER, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

In this tax foreclosure case, petitioner Ingham County Treasurer (Ingham County) appeals as of right an October 5, 2015 trial court order setting aside a final judgement of foreclosure and granting respondents the right of redemption. For the reasons set forth in this opinion, we reverse and remand.

## I. BACKGROUND

The property at issue consists of two parcels owned by Ellis T. Rigby (hereinafter "the property"). He died on October 29, 2001; no estate was ever opened. The decedent's son, Steven Rigby, occupied the property after his father died, but did not perfect title to the property. At some point, property taxes went unpaid. Ingham County learned of Ellis' death in 2008 and learned that Steven was occupying the property.

In 2009, Ingham County withheld the property from foreclosure and put Steven on a payment plan to pay off the unpaid 2006 property taxes on the property. However, by November 1, 2010, petitioner prepared a list of all property subject to forfeiture on March 1, 2011 for delinquent taxes, which included the property at issue. Further, sometime before December 1, 2010, Ingham County searched the records contained at the offices of the local assessor, local treasurer, and county treasurer to determine who may have had an interest in the subject property. Ingham County determined Ellis' non-existent estate and Steven were the only parties who may have had an interest. In January 2011, petitioner sent notice by certified mail, returned receipt requested, to Ellis' non-existent estate and Steven at the property address advising of the amount of unpaid taxes, interest, penalties, and fees owing, when the identified property would be forfeited to the county, the process by which foreclosure would take place, and that the

-1-

property could be lost without the ability to redeem as required by MCL 211.78f. The notices were returned to Ingham County unclaimed.

On March 1, 2011, the property was forfeited to petitioner. Within 45 days, petitioner recorded a notice with the county register of deeds, which included notification of when the property would be foreclosed without right of redemption. Sometime that month, Steven approached his neighbors and asked that they loan him $14,000, threatening the neighbors that he would commit suicide unless they loaned him the money. Steven's neighbors had a check issued to petitioner. When Steven brought his neighbors back a receipt, it indicated that it only paid off one year of property taxes; the neighbors had believed it would pay off three years of unpaid taxes.

On June 15, 2011, Ingham County filed a petition in circuit court listing the property as forfeited and required a hearing be set for some time in February 2012, at which time a judgment would vest marketable fee simple title without right of redemption if the delinquency was not paid off by April 2, 2012. The following persons or entities determined to have an interest in the property were sent notices of the impending foreclosure hearing by certified and first-class mail: the deceased, his non-existent estate, "E T Rigby," Steven Rigby, and "Occupant."

On September 24, 2011, a copy of the show-cause and judicial hearing notice was posted on the subject property. Notice of the foreclosure of the property was also published in the Lansing City Pulse[1] for three consecutive weeks in December 2011. And on February 23, 2012, a judgment of foreclosure was entered granting fee simple title to the property without further right of redemption if all forfeited delinquent taxes, interest, penalties, and fees foreclosed against the property, plus any additional interest required by statute, were not paid to the treasurer by April 2, 2012.[2] There is no dispute that the delinquent taxes were not paid by the April 2, 2012, redemption deadline.

In the meantime, on May 1, 2012, Steven's body was discovered in a home on the property. Multiple substances were found in his blood, including morphine, hydrocodone, oxycodone, cyclobenzaprine, diphenhydramine, and ethanol. The death certificate issued indicated that he died on or after March 29, 2012. According to the doctor who performed the autopsy, March 29, 2012 was identified because that is the last time somebody knew Steven was alive.

Respondents are Steven's first cousins and presumed heirs of his estate. On July 12, 2012, respondents filed a motion for relief from the judgment of foreclosure, citing the circumstances in this case—namely, that Steven died before the period of redemption expired but his heirs did not learn about his death before the period had expired, and they acted with reasonable diligence since learning of his death. On July 13, 2012 the trial court entered an ex

---

[1] An alternative, weekly newspaper published in Lansing, Michigan.

[2] An amended judgment of foreclosure was entered on February 28, 2012 correcting a typographical error in the February 23 judgment.

parte order enjoining Ingham County from selling the property at auction and setting a show-cause hearing.

At the show-cause hearing, respondents argued that no harm or damage would come to Ingham County if they were permitted to pay the back taxes. The trial court concluded that it was confronted with a "unique fact situation," stating:

> I'm not saying that the Treasurer hasn't appropriately followed the requirements. But I am moved by the fact, why should the Treasurer benefit from the value of the property when there were heirs. And as long as Steve Rigby was alive, their hands were tied. And then once they discovered his death, which apparently he must not have been discovered for at least a month, it looks like.
>
> * * *
>
> Maybe longer. And then when they discovered it, it seems like the heirs took prompt action to try to unravel the situation . . . .

The trial court indicated that it did not believe the intent of the foreclosure statutes was to give the county equity in the property when there were heirs trying to make the county whole. The trial court set a new redemption date of July 20, 2012.

Ingham County appealed, but this Court dismissed the appeal for lack of jurisdiction.[3] Ingham County subsequently filed an application for delayed leave to appeal the July 19, 2012 order, which this Court again denied, this time for lack of merit.[4] Ingham County then applied for leave to appeal to our Supreme Court, which, in lieu of granting leave, remanded the case to the trial court with the following instruction:

> we REMAND this case to the Ingham Circuit Court for consideration of whether the [respondents] were given adequate notice prior to the foreclosure of the property. See *In re Petition by Wayne Co. Treasurer*, 478 Mich 1, 8, 10, 732 NW2d 458 (2007) (holding that MCL 211.78k(6) deprives the circuit court of jurisdiction to alter a judgment of foreclosure, but that such a rule could, in some cases, violate a person's constitutional right to due process). [*In re Petition of Ingham Co Treasurer for Foreclosure of Certain Parcels of Prop*, 495 Mich 1001, 1001; 846 NW2d 56 (2014).]

On remand, the trial court held an evidentiary hearing. In conjunction with the evidentiary hearing, Ingham County filed a motion to determine that respondents were not parties of interest in the property at the time of the foreclosure and, therefore, were not entitled to

---

[3] *In re Petition of Ingham Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered September 18, 2012 (Docket No. 312181).

[4] *In re Petition of Ingham Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered July 24, 2013 (Docket No. 312547).

-3-

due process. The trial court did not address and apply *In re Petition by Wayne Co Treasurer* as instructed by our Supreme Court, but instead held that respondents were entitled to due process because of "the special unique circumstances of this case." The court explained:

> The Treasurer was aware that Ellis Rigby had died and had been dead for quite some time. So, I agree, I guess I can see, technically speaking, that since Ellis Rigby was still the registered property owner, his estate was, that notice would be technically sent to the estate. But as far as due process is concerned, effectively, they knew that that was not going to result in any notice to anyone interested in the estate. I recognize perhaps under the statute they had to still do that, because Ellis Rigby, or his successor estate, was still the named property owner. But the reality is, there is no way any service is going to be made over that.
>
> * * *
>
> Now, we come to the situation where, during the redemption period, Steven Rigby dies. So under this position, if the Treasurer previously had recognized Ellis Rigby's son Steven even though he had not taken any actions to perfect his interest on the theory that Steven Rigby was an heir of Ellis Rigby, then if I applied that same rationale at the time of Steven Rigby's death, which, looking in the light most favorable to the Respondents, occurred proper to the redemption period on March 29th, then the title would have vested in his heirs. And they never had any notice. And so it's a unique situation.
>
> . . . And . . . had they known they could have paid . . . . So there leaves a gap where I believe that the heirs of Steven Rigby were entitled to notice in this matter, for this purpose. . . . So I will deny [petitioner's] motion.

After the presentation of evidence, the trial court found that the market value of the property in 2009 was approximately $384,000 and the amount of back taxes owed were $34,000. The trial court concluded that the purpose of foreclosure is to allow a governmental unit to recover back taxes by foreclosing on property and selling it at a foreclosure sale. The trial court was "concerned that the value of the property is so much higher than the value of the taxes that it doesn't know if the County should be in a proprietary position under the facts and circumstances of this case . . . ." The trial court concluded that "due to the uniqueness of this situation, there was not due process notice given to the heirs of Steven at the time of his death."

The trial court also invoked equity:

> We have a valuable piece of property that worth $380,000 that has been in the family of [respondents] since the 30s which would not be 80 years approximately, close, 75 years, sometime, continuously in the hands of the family. The Treasurer if I find—I have found that there was not due process—is not suffering a loss because they're being paid in full the taxes that were outstanding. . . .

So equity in addition to the due process argument says if the Treasurer is whole and the family has held the property for over 75 years and now has paid the taxes in this matter, that the foreclosure should be set aside, that the monies that they have been paid into escrow should be paid to the Treasurer and I believe that agreement was that during this period taxes wouldn't accrue.

The court entered a written order on October 5, 2015. This appeal ensued.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for relief from judgment under MCR 2.612(C) for an abuse of discretion. *Heugel v Heugel*, 237 Mich App 471, 478; 603 NW2d 121 (1999). An error of law necessarily constitutes an abuse of discretion. *In re Waters Drain Drainage Dist*, 296 Mich App 214, 220; 818 NW2d 478 (2012). To the extent that we must interpret and apply the applicable statutes or court rules, these issues involve questions of law that we review de novo. *Haliw v City of Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005).

## III. GPTA

Property tax foreclosures are governed by the General Property Tax Act (GPTA), MCL 211.1a, *et. seq*. The process commences when, on March 1 of each year, property taxes that were levied in the immediate year preceding remain unpaid. The unpaid tax levy is returned to the county treasurer as delinquent. MCL 211.78a(2). Delinquency triggers notice requirements under the GPTA. Specifically, a county treasurer must send notices of the delinquency to the person to whom the tax bill was last sent or to the person identified as the owner. MCL 211.78b; MCL 211.78f.

Following the notices, in the event that the delinquent taxes remain unpaid on March 1 of the year following delinquency, the property forfeits to the county treasurer. MCL 211.78g(1). Forfeiture does not convey a "right to possession or any other interest in the property," instead, once the property is forfeited, the "foreclosing governmental unit [FGU] may seek a judgment of foreclosure under [MCL 211.78k] if the property is not redeemed as provided under [the GPTA]." MCL 211.78(6)(b).

After a property is forfeited, by June 15 following the forfeiture, the FGU must file a petition in the circuit court listing all property that has been forfeited and not redeemed to be foreclosed on under MCL 211.78k. MCL 211.78h. The petition must request a judgment for the unpaid taxes, interest, penalties and fees, and must request a judgment vesting absolute title to the property in the FGU without the right of redemption. MCL 211.78h(1).

Thereafter, before the foreclosure hearing, the FGU must hold a show-cause hearing to allow "*owners or persons with a property interest in the property*" to "show cause why absolute title to the property forfeited . . . should not vest in the [FGU]." MCL 211.78j(1) (emphasis added). In arranging for the show-cause hearing, the FGU must perform a title search "to identify *the owners of a property interest in the property* who are entitled to notice . . . of the

-5-

show cause hearing . . . and the foreclosure hearing [].”  MCL 211.78i(1)(emphasis added). Specifically,

> The owner of a *property interest* is entitled to notice under this section of the show cause hearing . . . and the foreclosure hearing . . . *if that owner's interest was identifiable by reference to any of the following sources* before the date that the county treasurer records the certificate required under section 78g(2):
>
> (a) Land title records in the office of the county register of deeds.
>
> (b) Tax records in the office of the county treasurer.
>
> (c) Tax records in the office of the local assessor.
>
> (d) Tax records in the office of the local treasurer.  [MCL 211.78i(6) (emphasis added) (internal citations omitted).]

After conducting a title search and identifying owners of a property interest, 30 days before the show-cause hearing, the FGU must furnace notice to those persons via certified mail, return receipt requested, to an address “reasonably calculated to apprise” them of the hearings. MCL 211.78i(2).  In addition, the FGU must physically inspect each parcel of forfeited property, and if the property appears to be occupied, the FGU must personally provide notice to the occupant, or, alternatively, if personal service is not possible, post notice on the property.  MCL 211.78i(3).

Once the FGU satisfies all of the notice requirements, a show-cause hearing must be held not later than seven days before the date of the foreclosure hearing.  MCL 211.78j(1).  Following the show-cause hearing, a judicial foreclosure hearing must be held in accord with MCL 211.78k.  At the hearing, “[a] person claiming an interest in [the property]” may appear at the hearing and contest the “validity or correctness of the forfeited unpaid delinquent taxes. . .” for various reasons.  MCL 211.78k(2); see also MCL 211.78k(3).

Following the hearing, a circuit court “shall enter a final judgment” of foreclosure and “[a]ll redemption rights to the property expire on the March 31 immediately succeeding the entry of [the] judgment foreclosing the property . . . or in a contested case 21 days after the entry of a judgment foreclosing the property. . . .”  MCL 211.78k(5).  The judgment must specify that the FGU has absolute title to the property if the delinquent taxes, interest penalties and fees are not paid on or before the redemption date.  MCL 211.78k(5)(d).  The judgment constitutes a “final order with respect to the property” and, following the date of redemption the order “*shall not be modified, stayed, or held invalid*,” MCL 211.78k5(g) (emphasis added), and

> Except as otherwise provided in [MCL 211.78k(5)(c) and (e)], *fee simple title . . . shall vest absolutely in the foreclosing governmental unit, and the foreclosing governmental unit shall have absolute title to the property . . .*  The foreclosing governmental unit's title is not subject to any recorded or unrecorded lien *and shall not be stayed or held invalid* except as provided in subsection (7) [appeal] or (9) [cancelation by the FGU].  [MCL 211.78k(6) (emphasis added).]

## IV.  PROCEDURAL DUE PROCESS

Our Supreme Court has previously held that failure to abide by the GPTA's notice requirements can amount to a violation of a property owner's procedural due process rights such that a judgment of foreclosure can be set aside despite the language in MCL 211.78k, which precludes a circuit court from invalidating, staying, or modifying a foreclosure judgment. Specifically, in *In re Petition by Wayne Co Treasurer* (*Perfecting Church*), 478 Mich at 4, the property owner, Perfecting Church, purchased two parcels of property in Wayne County to use as parking lots.  Both properties were transferred via a single deed, which was properly recorded. *Id*.  Shortly thereafter, the Wayne County Treasurer (Wayne County), listed one of the parcels on its foreclosure listing.  *Id*.  The church paid off the outstanding taxes on the parcel and Wayne County assured the church that there were no further unpaid taxes on the other parcel.  *Id*. at 4-5. Nevertheless, Wayne County proceeded to initiate foreclosure proceedings on the other parcel. *Id*. at 5.  Wayne County did not provide notice to the church, but rather, sent the statutorily-required notices to the prior owner of the parcel and failed to post a notice on the property.  *Id*. In short, "the church had no notice of the foreclosure proceedings."  *Id*.  The circuit court entered a judgment of foreclosure and, following the expiration of the redemption period, Wayne County sold the property to a third party.  *Id*.  After learning of the sale, the church filed a motion for relief from the foreclosure judgment.  *Id*.  The circuit court granted the motion and our Supreme Court ultimately granted leave to appeal.  *Id*.

On appeal, the intervening parties, the third-party purchasers of the property, argued that MCL 211.78k(6) "preclude[ed] the circuit court from staying or holding [Wayne County's] title invalid," and argued that the church was limited to an action for monetary damages under MCL 211.78l because it did not "avail itself of the redemption or appeal provision" contained in MCL 211.78k(6) and (7).  Our Supreme Court agreed that, under the GPTA, the circuit court did not have authority to set aside or modify the foreclosure judgment, explaining:

> The intervening parties accurately construe these provisions of the GPTA.  If a property owner does not redeem the property or appeal the judgment of foreclosure within 21 days, then MCL 211.78k(6) deprives the circuit court of jurisdiction to alter the judgment of foreclosure.  MCL 211.78k(6) vests *absolute title* in the foreclosing governmental unit, and if the taxpayer does not redeem the property or avail itself of the appeal process in subsection 7, then title "*shall not be stayed or held invalid ....*"  This language reflects a clear effort to limit the jurisdiction of courts so that judgments of foreclosure may not be modified other than through the limited procedures provided in the GPTA.  The only possible remedy for such a property owner would be an action for monetary damages based on a claim that the property owner did not receive any notice.  In the majority of cases, this regime provides an appropriate procedure for foreclosing property because the statute requires notices that are consistent with minimum due process standards. [*Perfecting Church*, 478 Mich at 8.]

The Court proceeded to hold that the GPTA's bar on recovery was unconstitutional in cases where the foreclosing governmental unit failed to provide a property owner with notice that satisfied procedural due process.  *Id*. at 10.  The Court explained that where a governmental unit

complies with the notice provisions of the GPTA, MCL 211.7k "is not problematic" and a circuit court is precluded from modifying a judgment of foreclosure. *Id.* However,

> in cases where the foreclosing entity fails to provide *constitutionally adequate* notice, MCL 211.78k permits a property owner to be deprived of the property without due process of law. Because the Legislature cannot create a statutory regime that allows for constitutional violations with no recourse, that portion of the statute purporting to limit the circuit court's jurisdiction to modify judgments of foreclosure is unconstitutional and unenforceable as applied to property owners who are denied due process. [*Id.* at 10-11.]

The Court concluded:

> In the present case, the county completely failed to comply with the notice provisions in the GPTA. As such, the county deprived the church of its property without providing due process. Therefore, for the reasons stated, we affirm the order of the Wayne Circuit Court that restored the church's title to the property in question. [*Id.* at 11.]

## V. APPLICATION

In this case, unlike in *Perfecting Church*, Ingham County complied with all of the notice provisions of the GPTA. Ingham County sent notice of the delinquency, MCL 211.78b, MCL 211.78f; after the property was forfeited, Ingham County properly petitioned for a judgement of foreclosure and properly identified persons with property interests as required by MCL 211.78h and MCL 211.78i(6)—i.e. Ellis' non-existent estate and Steven as occupant of the property. Ingham County properly mailed notice, posted notice on the property pursuant to MCL 211.78i(3), and published notice in a local newspaper.

Respondents were not among the individuals who qualified as owners of a property interest under MCL 211.78i(6). MCL 211.78i sets forth the duties of identification of owners. It required Ingham County to "initiate a search of records identified in [MCL 211.78i](6) to identify the owners of a property interest in the property who are entitled to notice under this section." MCL 211.78i(1). Pursuant to § 781i(6), owners of property interests entitled to notice of foreclosure hearings under § 78k are those whose

> interest was identifiable by reference to any of the following sources by reference to any of the following sources before the fact that the county treasurer records the certificate required under section 78g(2):
>
> > (a) Land title records in the office of the county register of deeds.
> >
> > (b) Tax records in the office of the county treasurer.
> >
> > (c) Tax records in the office of the local assessor.
> >
> > (d) Tax records in the office of the local treasurer.

Furthermore, Ingham County was required to and did make a personal visit to the property to determine if it was occupied and, if it appeared occupied, "[a]ttempt to personally serve upon a person occupying the property notice." MCL 211.78i(3)(a). If unable to meet personally with the occupant, petitioner was required to "place in a conspicuous manner on the property a notice," which Ingham County did. MCL 211.78i(3)(d).

Focusing on the time period before the foreclosure, the deceased Ellis and his non-existent estate was the owner of record and Steven was the occupant. Pursuant to our Supreme Court's directive, on remand, the question before the circuit court was whether respondents had any interest in the property such that they would have been entitled to notice of the foreclosure proceedings. The answer is; respondents did not have any interest in the land that was identifiable under MCL 211.78i(6) such that they were entitled to notice of the foreclosure hearings under § 78k. Indeed, respondents stipulated as much. Accordingly, respondents were not entitled to notice under the GPTA.

Similarly, because respondents did not have an ownership interest in the property, unlike the property owner in *Perfecting Church* who owned title to the foreclosed property, here, respondents were not entitled to procedural due process. It is axiomatic that a person does not have a protected property interest in something that he or she does not own. See *Dow v State*, 396 Mich 192, 204; 240 NW2d 450 (1976) (quotation marks and citations omitted) (noting that "[t]he actual owner of real estate, chattels or money has property interests protected by procedural due process."). The circuit court erred in holding otherwise.

Given that respondents were not entitled to notice under the GPTA and were not entitled to procedural due process, as of April 3, 2012, the redemption period expired and fee simple title to the property vested solely in Ingham County and Ingham County possessed "absolute title to the property." The circuit court did not have jurisdiction to modify, stay, or invalidate the judgment of foreclosure once the title vested in Ingham County. MCL 211.78k(5)(g) and (6); *Perfecting Church*, 478 Mich at 10-11. There was no statutory basis to set aside, modify, or invalidate the judgment of foreclosure. MCL 211.78k(6). Moreover, there were no constitutional grounds to modify, set aside, or invalidate the judgment of foreclosure as respondents were not entitled to due process. See *Perfecting Church*, 478 Mich at 9-11. Accordingly, unlike in *Perfecting Church*, the circuit court in this case did not have jurisdiction to modify or invalidate the judgment of foreclosure. *Id*.

The circuit court cited equity in granting respondents' relief from the judgment of foreclosure. However, "[w]hen a statute governs resolution of a particular issue, a court lacks the authority to invoke equity in contravention of the statute." *Thomas v Dutkavich*, 290 Mich App 393, 413, n 9; 803 NW2d 352 (2010). As our Supreme Court has previously explained, "[r]egardless of how unjust the statutory penalty might seem to this Court, it is not our place to create an equitable remedy for a hardship created by an unambiguous, validly enacted, legislative decree." *Stokes v Millen Roofing Co*, 466 Mich 660, 672; 649 NW2d 371 (2002). In this case, as noted above, the unambiguous terms of the GPTA provided that the circuit court did not have jurisdiction to modify or invalidate the judgment of foreclosure once the redemption period expired and title to the property vested in Ingham County. The circuit court did not have the authority to use equity to countermand the clear provisions of the GPTA and the court erred in holding otherwise.

In sum, respondents did not own any interest in the subject property before the foreclosure or before title vested in Ingham County. Therefore, respondents were not entitled to notice under the GPTA nor were they entitled to due process. Accordingly, the circuit court erred in granting respondents' July 12, 2012 motion for relief from the foreclosure judgment, erred in enjoining Ingham County from selling the subject property at auction, and erred in entering its October 5, 2015 order wherein it held that respondents were denied due process. Therefore, we reverse and remand for entry of an order denying respondents' motion for relief from the judgment of foreclosure.

Reversed and remanded for further proceedings consistent with this opinion. No costs awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher